COMMISSIONER OF CORPORATIONS AND TAXATION *vs.*
CLARISSA M. EATON.

SAME *vs.* SAME.

SAME *vs.* SAME.

Suffolk.    February 6, 1939. — October 31, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Tax,* On income.

Under a will directing a foreign trustee to hold a fund until a beneficiary, then a resident of another State, became thirty years of age when the trust should be terminated and the fund as then existing should be paid him, with power in the trustee in his absolute discretion to make payments before that date to or for the beneficiary from principal or income, sums paid by the trustee to the beneficiary before he became thirty years of age, after he became a resident of this Commonwealth and from income accumulated before he became such a resident, were taxable under G. L. (Ter. Ed.) c. 62, § 11.

THREE APPEALS, filed in the Supreme Judicial Court for the county of Suffolk on September 7, 1938, from decisions of the Appellate Tax Board.

*P. A. Dever,* Attorney General, *& J. B. Sullivan,* Assistant Attorney General, for the commissioner of corporations and taxation, submitted a brief.

*A. L. Newton,* (*D. L. Ley* with him,) for the taxpayer.

DOLAN, J.    These are three appeals by the commissioner of corporations and taxation (hereinafter referred to as the commissioner) from a decision of the Appellate Tax Board abating certain additional income taxes.    The Appellate Tax Board will be hereinafter referred to as the board, and Clarissa M. Eaton as the taxpayer.

Rosa C. Metcalf, the grandmother of the taxpayer, was a resident of the State of Rhode Island at the time of her death on February 6, 1917.    She died testate and her will was duly proved and allowed in the State of Rhode Island. Pertinent provisions of the will follow: "(b) Subject to

the said charges to be paid in the manner provided in the preceding Paragraph (a) set forth, my said residuary estate shall be held in trust by my said son Frederick in undivided one-third ($\frac{1}{3}$) parts thereof, as set forth in Paragraphs 1, 2 and 3 following: . . . 3. One (1) of the one-third ($\frac{1}{3}$) parts my Trustee shall hold until my granddaughter, Clarissa, shall reach the age of Thirty (30) years, but with the right on the part of my Trustee to pay, at any time prior thereto, such part or all of either principal or income to my said son Guy's widow, Clare, in trust for herself and her daughter Clarissa, in the respective proportions of one-third ($\frac{1}{3}$) and two-thirds ($\frac{2}{3}$) during the minority of my said granddaughter Clarissa, and after she reaches her majority, paying the respective proportions of Clare and Clarissa directly to each one of them, or continuing to pay to Clare, in trust for herself and her daughter, as my Trustee, in his absolute and uncontrolled discretion may see fit. Any payments out of either principal or income, which may be made hereunder, may be on account of Clare's share, or on account of Clarissa's share, at different periods of time, it being my intention to vest in my Trustee an absolute and uncontrolled discretion, both with respect to the time or times when payments may be made on account of Clare's interest herein, and also payments made on account of Clarissa's interest herein, subject, however, to the final termination of the trust when my said granddaughter Clarissa shall reach the age of thirty (30) years, as hereinbefore provided. . . . It shall, however, be the duty of Clare, as such Trustee, to apply such part or all of Clarissa's share of the said sums for the support and maintenance of Clarissa during her minority, as may, in Clare's discretion as such Trustee, be necessary or proper therefor, paying the residue, if any, to her when she reaches her majority, and after reaching her majority paying to her, as and when received from my Trustee, such sums so received on account of her interest in this said trust. The respective shares of Clare and Clarissa remaining at the time when my said granddaughter Clarissa shall have arrived at the age of thirty (30) years, shall be paid to them respectively at such

time.  Should Clarissa die before fifteen (15) years from the execution of my Will, the trust herein in this Paragraph 3. created, with respect to Clare, shall cease and determine at the expiration of the said fifteen (15) years, and my Trustee shall pay to her at such time the principal of her share, together with all income accumulated thereon; and the trust in this Paragraph 3. created, with respect to Clarissa, shall, in such a contingency, continue as to the person or persons entitled to her share for a period of fifteen (15) years, from the execution of my Will, at which time the said share of Clarissa shall be paid to the person or persons entitled thereto, but with the right on the part of my said Trustee to pay the entire principal and income, or portions thereof, from time to time, to the person or persons entitled thereto at any time prior to the expiration of the said fifteen (15) years.  Should Clare die before fifteen (15) years from the execution of my Will, the trust herein in this Paragraph 3. created, with respect to Clare, shall continue as to the person or persons entitled to her share for a period of fifteen (15) years from the execution of my Will, at which time the said share of Clare shall be paid to the person or persons entitled thereto, but with the right on the part of my said Trustee to pay the entire principal and income, or portions thereof, from time to time, to the person or persons entitled thereto, at any time prior to the expiration of the said fifteen (15) years.  4. My Trustee, or his successor in said Trust, shall have full power and authority to bargain, sell, transfer, deed, mortgage, invest, manage, and control, invest and re-invest, and deal with any and all of my said residuary estate contained in Item IV. of my Will, upon such terms and conditions as he, in his judgment, may see fit, as fully as an absolute owner, all statutory limitations now in force, or hereinafter enacted, as to the investment of trust funds, being hereby expressly waived, and in the execution of the said trust he shall have power to comply with all legal requirements as to writings, deeds, mortgages, or other documents or formalities."

The findings of the board are substantially as follows: The taxpayer was a resident of the State of Rhode Island

up to July, 1923. She established a residence in Massachusetts "about July 12, 1923." She was born on October 27, 1904, hence the trust involved terminated when she became thirty years of age in 1934. During 1932 the Rhode Island Hospital Trust Company, a resident of and appointed trustee by the courts of Rhode Island, paid to the taxpayer the sum of $19,741.34. The commissioner on August 31, 1935, assessed to the taxpayer an income tax on the aforesaid sum in the amount of $1,184.48, together with interest of $136.22, which was paid on September 14, 1935. In the year 1933 the trustee paid to the taxpayer $7,035.89, upon which the commissioner on October 1, 1935, assessed an income tax in the amount of $422.15, together with interest of $33.77, which was paid on October 15, 1935. A similar payment was made in the year 1934 of $12,908.33, and in addition the trustee held funds in the amount of $13,126 which, though then distributable, had not been distributed. The commissioner, on September 17, 1935, assessed a tax on the aggregate amount of $26,034.33, plus an uncontested item of $128.79, in the amount of $1,569.79, with an additional tax of ten per cent thereof amounting to $156.98 and interest of $27.47, which was paid on October 1, 1935. The taxpayer duly applied to the commissioner for an abatement of all the aforesaid taxes except the uncontested item above. The applications were denied and appeals were seasonably taken to the board. The property in the hands of the trustee was subject to trusts for beneficiaries established by separate paragraphs of the will, the details of which (the board found) "are not material to the issue here." The "trustee kept a general account of transactions in income and principal and a surplus income account. The surplus income account showed transfers from the general account, and the amount of accumulations from time to time; and as these funds were accumulated they were invested until distributed." The various interests in the fund were not segregated in the account except as the proportion to which each was entitled was applied to that person's account at the time of distribution. It was agreed that the

amounts above stated were received by the taxpayer in 1932, 1933 and 1934, and that all the payments were from income received and accumulated by the trustee prior to 1928 "and all, but a portion of the 1934 payment, was accumulated prior to July 1, 1923."

The taxpayer, citing *Commissioner of Corporations & Taxation* v. *Simmon,* 292 Mass. 507, as decisive of the point, contends that these payments constituted principal of the trust estate.  The commissioner contends that the payments were of income, and that the present cases are distinguishable in the facts from the *Simmon* case since "In that case there was no certainty that the income would ultimately come into the possession of the beneficiary or his heirs, while in . . . [the present cases] it was certain to ultimately come to the . . . [taxpayer] or those taking from her."

In the *Simmon* case the testator, a resident of New York at the time of his death, left certain funds to trustees to be invested and kept invested for his grandnephew "until he . . . [reached] the age of twenty-one, and then to be paid to him with all the accumulations."  Power was given to the trustees to make proper allowances for his "comfort, maintenance, education and support."  In the event that he died leaving no surviving child or children there were gifts over.  From the creation of the trust to its termination the beneficiary was a resident of Massachusetts.  The court said, in substance, that it was clear that during minority the beneficiary had no right to enjoyment in possession of any part of the fund, as to either principal or accumulations;  that the allowances for his support rested in the discretion of the trustees;  that his interest was subject to be utterly divested if he should die before reaching his majority;  that the income was not paid to him from year to year and when paid was not paid to him as income;  that it was converted into capital in New York as received year by year;  that what was paid to him was a legacy, a unit not due until a specified time, and payable only in the event that he was living;  that he had no power of actual disposition of it until paid to him;  and that when paid to him

it was a payment of capital and hence not taxable, except as to certain income accumulated in the year in which the trust estate and its accumulations were distributed to him.

In the present cases there was no mandate to the trustee to accumulate the income of the trust estate, but only an authorization to pay any part of the principal or of the income therefrom to the taxpayer in the absolute and uncontrolled discretion of the trustee. In this respect they are distinguishable from the *Simmon* case, where the trustees were under the duty to retain the estate, both principal and income (except as to provisions for support), until the time fixed for the termination of the trust. There was power to make appropriations for the support of the taxpayer during her minority in these cases as in the *Simmon* case. A part of the income in question was retained by the trustee in years when the taxpayer was a resident of the foreign State, whereas in the *Simmon* case the taxpayer was a resident of this Commonwealth during the life of the trust. In these cases the taxpayer had no right (except in circumstances hereinafter noted) to enjoyment in possession of any part of either the principal or income of the trust estate until the time fixed for the termination of the trust, unless the trustee saw fit in the exercise of an absolute discretion to make payments of either. In the *Simmon* case no such discretion resided in the trustees. In the present cases the taxpayer, having lived to a period fifteen years after the execution of the will, had a vested interest in the trust estate and the income therefrom, although prior to the termination of the trust she could not enter into enjoyment or possession of either unless the trustee saw fit in his discretion to make payments thereof to her. See *Claflin* v. *Claflin,* 149 Mass. 19, 21; *Daly* v. *Gaskins,* 240 Mass. 260, 261; *Ball* v. *Hopkins,* 254 Mass. 347, 350. In the *Simmon* case the taxpayer would be utterly divested of all interest in the trust estate and its accumulations unless he lived to the age of twenty-one years. In the *Simmon* case the fund as to both principal and income was a unit, the income being converted into capital from year to year when received. Other than that the dis-

cretion confided to the trustee is applicable to principal or income, we discover nothing in the will to show an intention on the part of the testatrix that the trust estate as to both principal and income was to constitute a unit.

In the *Simmon* case the accumulation of income and its immediate conversion into capital took place as a matter of law. In the present cases no duty was placed upon the trustee to accumulate the income, but only the authority to pay the whole or any part thereof to the taxpayer. It is true that, except possibly as to the provisions for her support and maintenance during her minority, she could not compel the payment of principal or income to her until the termination of the trust, unless it was established that the trustee in withholding payments was acting from selfish or dishonest motives. The title to the income did not vest in her prior to the termination of the trust, until appropriated by payment to her. *Wilson* v. *Wilson*, 145 Mass. 490, 492. *Rackemann* v. *Wood*, 203 Mass. 501, 506. Am. Law Inst. Restatement: Trusts, § 128, Comments *d, e.* Nevertheless, in the cases at bar the trustee was under no positive prescribed duty to retain either principal or income.

We are of opinion that the present cases are distinguishable from the *Simmon* case, and where, as in these cases, there is no direction to accumulate income but merely an authorization to pay or withhold in the discretion of the trustee, and the income in question is paid to the beneficiary in subsequent years, it cannot be said that the payments thus made are of principal and not of income of the trust estate. Otherwise, by the simple expedient of withholding income in one year under such a discretion as was reposed in the trustee in the instant cases, and paying it to the beneficiary in the succeeding year or years, the objects and purposes of the governing statute, G. L. (Ter. Ed.) c. 62, § 11, could be defeated. It is true that if the contention of the taxpayer is sound its disturbing effect is no argument against its recognition, "But a contention which in its results would seriously cripple the practical operation of any comprehensive system of State income taxation has no presumption in its favor and ought not to be adopted except because

of compelling considerations." *Maguire* v. *Tax Commissioner*, 230 Mass. 503, 512, affirmed 253 U. S. 12. In the light of the purposes of such taxation as set forth in the case just cited, we think that in the present cases there are no considerations compelling the acceptance of the taxpayer's contention. See *First National Bank of Boston* v. *Commissioner of Corporations & Taxation*, 279 Mass. 168, 171.

The taxpayer has argued that the major portion of payments involved was of income accumulated by the trustee while she was a resident of Rhode Island, and that "The levy by Massachusetts of an income tax on the mere act of receiving in or transferring to Massachusetts inherited funds previously accumulated in another State would be in violation of the Fourteenth Amendment to the Constitution of the United States." This contention cannot be sustained. "The assessment does not touch the fund, or control it; nor does it interfere with the trustee in the exercise of his proper duties; nor call him, nor hold him, to any accountability. It affects only the income, after it has been paid by the trustee to the . . . [beneficiary]." *Bates* v. *Boston*, 5 Cush. 93, 99. *Maguire* v. *Tax Commissioner*, 230 Mass. 503, 513, affirmed 253 U. S. 12. When the payments involved were actually made to the taxpayer she was an inhabitant of this Commonwealth. *First National Bank of Boston* v. *Commissioner of Corporations & Taxation*, 279 Mass. 168, 172. *Longyear* v. *Commissioner of Corporations & Taxation*, 265 Mass. 585.

It follows that the board erred in its rulings to the effect that none of the payments by the trustee to the taxpayer on which the taxes, abatement of which is claimed, were assessed, constituted income taxable to her by this Commonwealth; that the payments involved were of capital; and that accumulations of income received by the trustee over a series of years and paid to the taxpayer several years after such accumulations were made did not constitute taxable income to the taxpayer under the laws of Massachusetts. Accordingly the decision of the board is reversed and the abatements sought by the taxpayer must be denied.

*So ordered.*