**HOLCOMBE et al. v. UNITED STATES.**

**SAME v. HASSETT, Acting Collector of Internal Revenue.**

Nos. 16, 6922.

District Court, D. Massachusetts.

Oct. 20, 1941.

472

No. 6922.

Hill, Barlow & Homans and Francis G. Goodale, all of Boston, Mass., for plaintiff.

Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and J. E. Garvey, Sp. Assts. to the Atty. Gen., for defendant.

No. 16.

Charles Y. Wadsworth, Hill, Barlow, Goodale & Wiswall, and Francis G. Goodale, all of Boston, Mass., for plaintiffs.

Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both

of Boston, Mass., and J. E. Garvey, Sp. Asst. to the Atty. Gen., for defendant.

FORD, District Judge.

These are two actions to recover federal income taxes. In the first, a suit against the United States, the plaintiffs, trustees under the will of Edwin Ginn, seek recovery of income taxes claimed to have been erroneously assessed and collected from these plaintiffs in the amount of $7,101.93 for the year 1931 and in the amount of $9,885.03 for the year 1932. In the second, a suit against Thomas B. Hassett, Acting Collector of Internal Revenue, the plaintiffs seek recovery of income taxes in the amount of $8,503.62 for the year 1934.

## Findings of Fact.

The plaintiffs in these cases are successor trustees under the will of Edwin Ginn, who died January 21, 1914, leaving a will and codicil duly admitted to probate by the Probate Court for the County of Middlesex, Massachusetts, on February 24, 1914.

The testator's will after giving to the testator's widow, M. Francesca Grebe Ginn, certain personal property and a life interest in certain real estate, and after providing certain specific pecuniary legacies, gave the testator's residuary estate to trustees, predecessors in office of the plaintiffs, upon the trusts set forth in Article XV of the will, of which the relevant portions may be briefly summarized as follows:

Paragraph 1 gives the testator's widow an annuity of $25,000.

By paragraphs 2–5, inclusive, the three oldest children of the testator are given annuities of $4,000. Two younger children, the beneficiaries of a trust earlier created by the testator, were given as much as might be necessary, when added to their income from this other trust, to make up an annuity of $4,000. A provision was made for annuities of $1,000 for each child of his son, Maurice. These annuities were payable until the children reached the age of 25, in the case of children born before the testator's death, and until they reached 21, in the case of children born thereafter. All children of Maurice who should reach the age of 5 were also given legacies of $10,000 from the principal of the fund. Children of the testator's daughters, Jessie and Clara, were given similar legacies of $10,000 from the principal and

also annuities of $1,000 payable until they reached the age of 25, in the case of children born before the testator's death, and until 21 in the case of after-born children. Also, provision was made for annuities of $1,000 until 21 for any adopted children of these daughters. None of these latter annuities was to be payable except after the death of the testator's daughters.

Paragraph 6 gave an annuity of $2,000 to Antonia Grebe, the widow's sister.

Paragraph 7 gave annuities of $250 to Marie E. Riley and to each of three named daughters of one Angeline S. Donnell, deceased.

By paragraph 8, it was provided that if either of the testator's sons should show "aptitude, steadfast purpose, and efficiency" for a business or professional career they should be given 1,000 shares of the partnership stock of Ginn & Company, or their cash equivalent.

Paragraph 11 provided for the payment of the estimated income of $800,000, but not to exceed $40,000 in any one year; to the World Peace Foundation.

Paragraph 13 gave legacies, after the reservation of sufficient trust funds to provide for payment of all the above gifts, of $10,000 to Tufts College, to Westbrook Seminary of $10,000, to the Ingleside Home of $15,000, and of a second $15,000 if other benefactors should make up an equal amount.

Paragraph 14 makes ultimate gifts of the principal. One-tenth was to go to Tufts College, 1/10 to Westbrook Seminary, 1/10 to Ingleside Home, 7/20 to Charlesbank Homes, and the remaining 7/20 was to continue to be held for the World Peace Foundation.

The last part of paragraph 15 provided that: "In case my estate should be less than I now reasonably anticipate, so that all my purposes cannot be carried into effect, then I expressly provide that all the gifts and annuities provided in this Will, down to and including paragraph XV(9), shall be paid in full before any payment shall be made under paragraph XV(11) to the World Peace Foundation."

All the institutions named in paragraph 14 as legatees of the principal of the trust were, in 1932, and ever since that time have been, corporations organized and operated exclusively for charitable purposes.

A codicil to the will altered paragraph 13 by providing that $5,000 of the first $15,000 therein given to the Ingleside Home should go to Mrs. Gula Graves Plummer. It also modified paragraph 14 by striking out the provision which gave $\frac{1}{10}$ of the residue to the Ingleside Home and substituting therefor a gift of "$\frac{1}{3}$ of $\frac{1}{10}$ or $\frac{1}{30}$th" to Mrs. Gula Graves Plummer and $\frac{2}{30}$ to the Ingleside Home. All the legacies provided for by paragraph 13 as modified by this codicil had been paid before 1931.

By a supplementary agreement between M. Francesca Grebe Ginn and the then trustees under the will and all other persons and corporations named in the will having a residuary beneficial interest either in the income or in the principal of the trust property, M. Francesca Grebe Ginn agreed not to waive the provisions of the will. In consideration of this, it was agreed that in addition to the property and rights which accrued to her under the will she should receive from the trustees annually so long as she should live "such a sum of money as is equal to the difference (if any) between one-third of the net annual income of the estate of said Edwin Ginn for the given year, computed as herein set forth, taken as a minuend, and $28,000 taken as a subtrahend" and in this agreement the "beneficiaries" requested and directed the trustees to make such annual payments of income to M. Francesca Grebe Ginn and agreed not to question in any form the legality or propriety thereof.

Upon a petition for instructions as to the interpretation of the will and as to the duty of the trustees thereunder brought by the plaintiffs' predecessors in office, the Supreme Judicial Court of Massachusetts, in 1917, (Parkhurst v. Ginn, 228 Mass. 159, 117 N.E. 202, Ann.Cas.1918E, 982) rendered a decision interpreting the will in which the following appears: "But it is apparent from the final sentence of article 15 that in substance the testator intended that the annuities to his family should be preferred to all other legacies in case of a deficiency, and in case of necessity should be a charge upon both principal and income". 228 Mass. at page 172, 117 N.E. at page 206. " * * * But it is plain, also, that the testator was solicitous that the support of his family and the World Peace Foundation should be as certain as human foresight could make it, and not subject to any vicissitudes. A good margin of safety should be preserved at all times in the principal of the fund, so that these beneficiaries may receive a constant income. * * * It follows that the trustees should retain for the time being as a part of the capital of the fund the balance of the accumulated cash, whether of principal or income". 228 Mass. at pages 174, 175, 117 N. E. at page 208.

The value of the securities held by the trustees on December 31, 1931 was in excess of $1,800,000. The chargeable income of the trust, exclusive of capital gains, and after deduction of taxes, expenses of administration, and a small amount of income derived from non-taxable obligations, was $104,798.79 in 1931; in 1932, it was $100,812.27; and, in 1934, it was $92,488.53. A net profit from the sale of real estate, stocks, and bonds of $11,033.75 was realized in 1931, of $1634.55 in 1932, and of $603.35 in 1934. Of this income, the testator's widow under her "agreement" received $11,222.56 in 1931, $10,009.77 in 1932, and $7909.78 in 1934. The World Peace Foundation received the estimated income of $800,000 in each year. This amounted, in 1931, to $38,728, in 1932 to $37,128, and in 1934 to $34,504. The payments made to annuitants which were charged against this portion of income amounted to $48,316 in 1931, to $47,753.62 in 1932, and to $41,127.24 in 1934. (The remaining amounts paid to annuitants, totalling $683.30 in 1931, $493.63 in 1932, and $2698.85 in 1934, were paid out of income from non-taxable obligations). After payment of all these charges, the remainder of the income was added to an accumulated surplus income account. The sum so added was, in 1931, $6531.53, in 1932, $5920.88, and, in 1934, $8947.51. The balance of the surplus income carried in the accumulated surplus income account was, at the end of 1931, $101,968.43; at the end of 1932, $107,654.15; and, at the end of 1934, $117,390.21.

In their income tax returns for all these years, the trustees deducted the sums paid to the World Peace Foundation, the expenses of the trust, the amounts paid to Mrs. Ginn under the "agreement", and that part of the income of the trust which was derived from tax-exempt securities. As to their right to do this, there is no dispute. However, in the income tax returns filed for 1931 and 1932 the trustees charged themselves only with the income from gains realized on the sale of stocks and bonds and surplus income from dividends and interest remaining after making payments to the widow, the Foundation, and annuitants, together with expenses of administration.

The Commissioner of Internal Revenue determined a deficiency of $5,544.37 in 1931 and of $8,628.69 in 1932 on the ground that the return should have included the amount of the annuities since these were not income to be distributed currently to the beneficiaries, and furthermore, that no part of the plaintiffs' income had been paid to or permanently set aside for charitable corporations. These deficiency assessments were paid in 1935. A claim for refund, timely filed with the Collector of Internal Revenue, was disallowed December 11, 1935.

In 1934, a return was made of $50,678.10 which included the amount of profit on the sale of capital assets, the surplus income, and the amount paid to the annuitants. A tax thereon of $8,450.51 was paid to the defendant Hassett in 1935. Thereafter a claim for refund was timely filed, which the Commissioner disallowed.

All children of the testator were mentioned in the will. All were living in 1931. At that time, Maurice Ginn was 59 years of age and his wife 51. The testator's widow was 73 years of age. Antonia Grebe, one of the annuitants named in the will, died July 11, 1919. Maurice Ginn had three children, all of whom were receiving annuities in 1931, but one of them was then 22 years old. Jessie Bartlett Ginn was 61 years old and had never been married. She had adopted two children. One of these children was at the time over 21 and could never be entitled to an annuity. The other was 13. Clara Ginn Dimick was 57 and had no living children. Marguerita Ginn Patterson and Edwin Ginn, two younger children of the testator, were 33 and 35 years of age, respectively. Of the other annuitants, Marie E. Riley was 70 and the Donnells between 40 and 50 years of age. Maurice Ginn had never qualified, in the opinion of the trustees, to receive the gift provided for under Article XV, paragraph 8 of the will. Edwin Ginn had so qualified and had received the cash equivalent of 1,000 shares of stock in Ginn & Company in 1924.

There are three issues involved here.

1. Whether the fixed annual payments payable to members of the testator's family and certain others were deductible as distributions of income to beneficiaries under Section 162(b) of the Internal Revenue Acts in force during the taxable years in question.

2. Whether 29/30 of the net gains on sale of capital assets realized by the trustees were deductible in determining capital income as being permanently set aside for the benefit of charities within the contemplation of Section 162(a) of the Internal Revenue Acts then in force.

3. Whether 29/30 of the "surplus income" in each year (that is to say, income of a given year which remained after paying all expenses and making all payments to beneficiaries of that year, and which at the close of the year was carried by the trustees to an account entitled "accumulated income") was deductible by the trustees as income then permanently set aside for the charitable remaindermen.

The applicable provisions of the statutes involved by the issues are Sections 23 and 162 of Revenue Act of 1928, c. 852, 45 Stat. 791, 26 U.S.C.A. Int.Rev.Acts, pages 356, 405; Sections 23 and 162 of the Revenue Act of 1932, c. 209, 47 Stat. 169, 26 U.S.C.A. Int.Rev.Acts, pages 489, 541; and Sections 23 and 162 of the Revenue Act of 1934, c. 272, 48 Stat. 680, 26 U.S.C.A. Int.Rev.Acts, pages 671, 725.

The Supreme Judicial Court of Massachusetts in the cases of Holcombe et al. v. Ginn et al., 296 Mass. 415, 6 N.E. 2d 351, and Parkhurst v. Ginn, supra, decided that these annuities were payable, if necessary, out of principal. The will must be interpreted in accordance with Massachusetts law. "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed." Morgan v. Commissioner of Internal Revenue, 309 U.S. 78, 80, 60 S.Ct. 424, 426, 84 L.Ed. 585; Blair v. Commissioner of Internal Revenue, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; and Uterhart v. United States, 240 U.S. 598, 36 S.Ct. 417, 60 L. Ed. 819.

The contention of the plaintiffs that the Massachusetts court in making this pronouncement overlooked the fact that certain of the annuities were said to be payable "out of income" cannot be supported. I think that the language of the will as a whole indicates clearly that the testator intended to provide equally for his children and grandchildren and that all annuities to them should be paid in full from the income or corpus of the estate. This clear general intention should

control the phrase "out of income" so that the latter be understood to be qualified by "primarily".

Annuities such as these which are a charge, if necessary, upon principal are not deductible by trustees as income "which is to be distributed currently by the fiduciary to the beneficiaries", within the meaning of the applicable revenue acts. Helvering v. Pardee, 290 U.S. 365, 370, 54 S.Ct. 221, 78 L.Ed. 365; Burnet v. Whitehouse, 283 U.S. 148, 51 S.Ct. 374, 75 L.Ed. 916, 73 A.L.R. 1534. This leads to the conclusion that the Commissioner's determination of the first issue was correct.

■ With respect to the second issue involved, it will be noted that the Massachusetts courts have decided that gains realized on the sale of securities and real estate become a part of the trust corpus. Holcombe et al v. Ginn et als, supra; Chase v. Union National Bank of Lowell et al., 275 Mass. 503, 176 N.E. 508; Williams v. Milton, 215 Mass. 1, 102 N.E. 355. No book entry is needed to satisfy the requirements of the statute, if by operation of the will's provisions there is a permanent setting aside. Bowers v. Slocum et al., 2 Cir., 20 F.2d 350.

■■ But was the entire corpus of the trust involved in this suit, on the facts shown, so secured from the possibility of invasion to pay the annuities that it may fairly be said to have been permanently set aside for charitable purposes? The current net income as evidenced by the facts set out above was in all tax years amply sufficient to provide for all annuities, the World Peace Foundation, and Mrs. Ginn's payments, and leave a fairly substantial amount of surplus. The accumulated income for past years was of very substantial proportions and the trustees would be compelled to utilize it to pay the annuities before the principal could be charged. Commissioner of Corporations and Taxation v. Eaton, 304 Mass. 260, 23 N.E.2d 559. In view of paragraph 15 of Article XV of the will it seems that payments under paragraph 11 to the World Peace Foundation would end before the corpus would be invaded to meet annuity payments. Also, another consideration is that no payment was required to be made to Mrs. Ginn unless ⅓ of the income of the trust should exceed $28,000. The total income was over 100 per cent greater than the amount required to pay annuities. The amount required for annuities would undoubtedly decrease because of the age of some of the annuitants and the unlikelihood of further grandchildren to enjoy an annuity. It would seem from these facts that the probability that the corpus would ever be needed to pay the annuities, from a practical standpoint, is negligible.

In the light of these considerations, we may turn to the cases in point.

The court in the case of Commissioner of Internal Revenue v. F. G. Bonfils Trust, 10 Cir., 115 F.2d 788, 792, stated: "We, therefore, conclude that the question whether the corpus, including the capital gains, has been permanently set aside for charitable purposes should be determined by a consideration of the provisions of the will in the light of the actual facts respecting the amount of corpus set aside out of which annuities were to be paid, the income derived therefrom, the amount of annuities, and the degree of probability that corpus will be resorted to for annuity payments." The court's decision in this case was, without question, based upon the case of Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647. In the latter case, the will gave the residue of the testator's estate to his wife for life with authority to use from the principal any sum "that may be necessary to suitably maintain her in as much comfort as she now enjoys". The question in this case was whether the provision for the wife's maintenance made the gifts to charity so uncertain as to render them non-deductible. The court stated at page 154 of 279 U.S., at page 291 of 49 S.Ct.: "The principal that could be used was only so much as might·be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money. * * * There was no uncertainty appreciably greater than the general uncertainty that attends human affairs." And the court held the gifts were deductible under the provisions of Section 403(a) of the Revenue Act of 1918, 40 Stat. 1098. The same principle of the Ithaca Trust Company case was applied in Hartford-Connecticut Trust Co. v. Eaton, 2 Cir., 36 F.2d 710. Cf. United States v. Provident Trust Co., 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793, and City Bank Farmers' Trust Co. v. United States, 2 Cir., 74 F.2d 692.

I believe the principles expressed in the Ithaca Trust Company and Bonfils cases are applicable to the instant case. Each individual case is bottomed on its own facts and, here, the provisions of the will and the surrounding facts support the plaintiffs' contention that the capital gains realized from the sale of securities and real estate in the tax years in question were deductible. I do not believe, so long as the decision in the Ithaca Trust Company case stands, that any other conclusion can be reached except that the gains realized in the tax years here in question were permanently set aside for charitable purposes.

I see nothing in the cases of Boston Safe Deposit & Trust Co. v. Commissioner of Internal Revenue, 1 Cir., 66 F.2d 179, and Gammons v. Hassett, 1 Cir., 121 F.2d 229, cited by the government, that would compel a contrary conclusion. In the Boston Safe Deposit & Trust Company case, the court relied on the finding of the Board of Tax Appeals that it was probable the corpus would have to be invaded. It may be noted that the court in distinguishing the case of Hartford-Connecticut Trust Co. v. Eaton, supra, did so from a factual standpoint and not because it disapproved the principles of that case. In Gammons v. Hassett, supra, an estate tax case, the court dealt with a charge on corpus for the "needs or desires of the life beneficiary." Under such a power, the court could find, although as a practicality it seemed quite remote, that there was likelihood of an invasion of the corpus. There is no such likelihood here where the lack of likelihood can be measured by the certainty of mathematical calculation.

■■■ This leaves the one remaining question. Were the trustees justified in deducting, in the tax years involved, "surplus income" of the trust? Were these amounts "pursuant to the terms of the will permanently set aside" for charitable purposes? In construing the will, the Massachusetts Supreme Court in Parkhurst v. Ginn, supra, stated at pages 174, 175 of 228 Mass., at page 208 of 117 N.E., Ann.Cas. 1918E, 982: "But it is plain, also, that the testator was solicitous that the support of his family and the World Peace Foundation should be as certain as human foresight could make it * * *". Consequently, the large sum of accumulated income would seem to be a reserve to secure payments to both annuitants and the Foundation, without impairing the corpus, in case of a deficiency in the amount of current income. The value of the corpus during the years in question was about $1,800,000. The testator intended the Foundation to continue to receive the income from $800,000 even if the income of the remaining $1,000,000 corpus was insufficient to pay taxes, expenses, and annuities, all the latter to be met out of the reserve. The possibility of the income from $1,800,000 not being sufficient to meet all the charges is not too remote to be disregarded. The margin of safety in each of the years in question, as shown by the amounts of surplus income actually compiled was not large, varying from 10 to 20 per cent of the amount needed to meet those charges. And it may be noted that in 1931, 1932, and 1934 (depression years) there was a trend toward lower income rates.

I think, taking these facts into consideration, we more nearly approach the situation present in the Boston Safe Deposit & Trust Company case, supra, rather than that in the Bonfils case. It cannot properly be said that there is not present in the case of surplus income the danger of invasion. There is not sufficient margin of safety with regard to this as was found in the case of capital gains. Again, in this connection, it does not appear that there was a setting aside of surplus. By Massachusetts law capital gains immediately become part of the corpus. This is not the case where surplus income is concerned. The case of Commissioner of Corporations and Taxation v. Eaton, supra, held that accumulation of income, held under the terms of a trust for future distribution, does not become part of the corpus but remains income until distributed. The income of the trust was subject to the payment of annuities. Consequently, the surplus income, instead of current income, might have been used for that purpose. Thus, it does not appear there was any "setting aside" of surplus income which would satisfy the requirements of Section 162(a) of the applicable revenue acts.

### Conclusion.

In view of the above 29/30 of the amounts of $11,033.25 for the year 1931, $1,634.55 for the year 1932, and $603.35

for the year 1934, which sums represent the capital gains, were in these years permanently set aside for the benefit of the charitable remaindermen and properly deductible in the income returns of the plaintiffs for those years.

Judgment with interest according to law will be entered for the plaintiffs in each case for the appropriate reduction of taxes in accordance with this opinion. The parties will make the computation. In the event of disagreement, the court will make it upon application.