STATE TAX COMMISSION *vs.* ROBERT L. FITTS & others.[1]

Suffolk.    October 6, 1959. — March 18, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Taxation,* Income tax. *Statute,* Retroactive statute, Tax statute. *Trust,* Income. *Words,* "Received."

St. 1955, c. 592, § 3, amending G. L. c. 62, § 11, and subjecting certain income to taxation, was not applicable retroactively. [578]

A dividend in liquidation of a corporation received by foreign trustees of an inter vivos trust created by a resident of Massachusetts constituted income "received" by the settlor within G. L. c. 62, § 11, even though the dividend was not distributed by the trustees to him, where it appeared that the trustees were a trust company and the settlor's brother, who had no substantial adverse interest in the trust, and that the trust instrument contained provisions requiring the trustees to dispose of net income "as the settlor may direct from time to time," reserving the right in the settlor, exercisable by the settlor and his brother if living, or, if not, by the settlor alone, to amend, alter or revoke the trust in whole or in part, and prohibiting the appointment

---

[1] Since these proceedings were commenced Mary N. Fitts has died and her administrators have been substituted as parties.

of any individual as trustee who had "any interest, vested or contingent, in the trust property"; a further provision of the trust instrument in effect requiring treatment of such dividend as principal and not income was also subject to the power of amendment and did not aid the settlor. [579–580]

APPEAL from a decision by the Appellate Tax Board.

*Roy F. Teixeira,* Assistant Attorney General, for State Tax Commission.

*Harry K. Mansfield,* for the taxpayers.

SPALDING, J. This is an appeal by the State Tax commission from a majority decision of the Appellate Tax Board granting an abatement of an income tax assessed under G. L. c. 62, § 11, to Robert L. Fitts and his wife Mary N. Fitts, for the year 1955 by reason of the receipt of liquidating dividends in that year by the trustees of two Vermont trusts established by Robert and Mary. The case was submitted on agreed facts.

Robert and Mary were inhabitants of this Commonwealth during the entire calendar year 1955. On January 1, 1955, Robert owned 27,000 shares of the common stock of Southern Advance Bag and Paper Co., Inc. (hereinafter called Southern), of which he was the president. Mary owned 4,000 shares. As president of Southern, Robert had been negotiating for the sale of its assets to the Robert Gair Co., Inc. (hereinafter called Gair), and on February 28, 1955, a plan and agreement of reorganization was concluded for the sale, which was to be consummated on May 2, 1955. Under the agreement, a pro rata distribution of Gair stock to the shareholders of Southern was to be made on a date shortly after May 2, 1955. After the distribution Southern was to be liquidated.

In the latter part of April, shortly before the sale, Robert and Mary each executed trusts, Robert transferring his 27,000 shares in Southern to the Robert L. Fitts trust and Mary transferring 2,000 of her 4,000 shares to the Mary N. Fitts trust. Since the provisions of the two trusts are similar we need recite only the pertinent provisions of the Robert L. Fitts trust. The trustees are Robert's brother,

Osmer C. Fitts, Esquire, an attorney in Brattleboro, Vermont, and the Proctor Trust Company of Proctor, Vermont.[1] Under Article Second the trustees are required to dispose of net income "as the settlor may direct from time to time by an instrument in writing"; income in any year which is undistributed is to be added to principal at the end of the year. Elsewhere there are elaborate provisions in favor of the settlor's wife and issue and corresponding provisions are contained in Mary's trust. By Article Third, the settlor reserved the right, exercisable by himself and his brother if living, and, if not, by himself alone, to amend, alter or revoke the trust in whole or in part. By § 8 of Article Twelfth all net proceeds from the sale, exchange or other disposition of the trust property shall be treated as principal and may not be allocated in any respect to income. Article Thirteenth gave the settlor, if living, the right to appoint a successor individual trustee should a vacancy occur in that office, and, if not, the settlor's wife was to have that right.[2] That article further provided that "[n]o individual shall be appointed a trustee hereunder who has any interest, vested or contingent, in the trust property." Mr. Osmer C. Fitts, the individual trustee in both trusts, has no substantial adverse interest in either trust.

On May 2, 1955, the sale of Southern's assets to Gair was consummated and on May 18, 1955, the trustees of Robert's and Mary's trusts received their pro rata distribution of Gair stock in exchange for Southern stock held by them. It is agreed that the distribution in liquidation by Southern of Gair stock meets the definition of a dividend within the meaning of G. L. c. 62, § 1, and was subject to taxation to the extent provided by c. 62.

In a joint return filed by Robert and Mary for the year 1955, they failed to include for taxation the liquidating

---

[1] Originally the Vermont-Peoples National Bank of Brattleboro was one of the trustees but it resigned on July 24, 1956, and was succeeded by the Proctor Trust Company.

[2] A corresponding right was given to the husband in Mary's trust.

dividends of Southern received by the trusts. The State tax commission, after an audit, and in accordance with the proper procedure, made an assessment against Robert and Mary of an additional tax on the liquidating dividends. No question is raised either as to the computation of the dividends or as to the amount of the tax.

In May, 1955, when the transactions which gave rise to the assessment occurred, the applicable statute was G. L. c. 62, § 11, which read in part: "Any inhabitant of the commonwealth who receives income from one or more trustees or other fiduciaries who are not subject to taxation under this chapter, shall be subject to the taxes imposed by this chapter upon such income according to the nature of the income received by such trustees or other fiduciaries." By St. 1955, c. 592, § 3 (which was approved on July 22, 1955, and became effective on October 20, 1955), § 11 was amended to read, "Any inhabitant of the commonwealth who receives, *is entitled to, or to whom* income *is available* from one or more trustees or other fiduciaries who are not subject to taxation under this chapter, shall be subject to the taxes imposed by this chapter upon such income according to the nature of the income received by such trustees or other fiduciaries" (emphasis supplied). It will be noted that the italicized words were added.

We are of opinion that the amendment is to be applied prospectively and that the rights of the parties are to be governed by § 11 as it stood prior to the amendment. "Statutes imposing taxation are not to be construed as operating retroactively unless the legislative intention is clearly declared." *Magee* v. *Commissioner of Corps. & Taxn.* 256 Mass. 512, 517. *United States Trust Co.* v. *Commissioner of Corps. & Taxn.* 299 Mass. 296, 299. *Squantum Gardens, Inc.* v. *Assessors of Quincy,* 335 Mass. 440, 453. Here there is no indication that the Legislature intended the amendment to operate retroactively. Accordingly, within the rule just stated, it cannot apply to the transactions under consideration, as they occurred approximately five months before the amendment became effective.

The question, then, is whether the receipt of the liquidating dividends by the Vermont trustees constituted income "received" by the taxpayers within the meaning of § 11 as it read prior to the amendment. Had the dividends been paid directly to the taxpayers, there can be no doubt that they would have come within the statute (*Commissioner of Corps. & Taxn.* v. *Eaton,* 304 Mass. 260) and that they would have been taxable as income under the rate prescribed by G. L. c. 62, § 1 (b). *Wellman* v. *Commissioner of Corps. & Taxn.* 289 Mass. 131. Here the dividends were received by the trustees but were not distributed to the taxpayers. If the dividends are to be taxed it must be on the theory the taxpayers can be treated as having in effect received them because upon their demand they could have obtained the dividends. The question is analogous to that of constructive receipt. We have been directed to no case, and have found none, where this court has applied the doctrine of constructive receipt to uphold the imposition of a tax. Several cases, however, while holding the doctrine inapplicable to the facts, have recognized it. See *Commissioner of Corps. & Taxn.* v. *Thayer,* 314 Mass. 375, 377; *Commissioner of Corps. & Taxn.* v. *Williston,* 315 Mass. 648, 651. In *Commissioner of Corps. & Taxn.* v. *Newton,* 324 Mass. 409, 414, it was said that "the only event upon which a tax can be laid is the actual or constructive receipt of income."

There can be no doubt that under the Federal taxing statutes the dividends would be taxable by reason of specific provisions of the Internal Revenue Code of 1954. 26 U. S. C. (1952) Supp. II, §§ 671–678. See Revenue Act of 1924, § 219 (g) and (h), 43 Stat. 277. Section 676 of the code provides that "The grantor shall be treated as the owner of any portion of a trust . . . where at any time the power to revest in the grantor title to such portion is exercisable by the grantor or a non-adverse party, or both."[1]  It must be

---

[1] Under § 672 "adverse party" is defined as "any person having a substantial beneficial interest in the trust which would be adversely affected by the exercise or nonexercise of the power which he possesses respecting the trust."

conceded that § 11, as worded prior to the amendment of 1955, does not spell out the tax liability with as much particularity. Nevertheless, unless we are to exalt form over substance, we think that the dividends here were to all intents and purposes "received" by the taxpayers. "[T]axation is not so much concerned with the refinements of title as it is with actual command over the property taxed — the actual benefit for which the tax is paid. If a man directed his bank to pay over income as received to a servant or friend, until further orders, no one would doubt that he could be taxed upon the amounts so paid." *Corliss* v. *Bowers*, 281 U. S. 376, 378.

Looking to the substance of the transaction, it seems clear to us that after May 18, 1955, the taxpayers could have received the liquidating dividends and, indeed, the entire trust corpus whenever they desired, by merely exercising any of the powers they had reserved to amend, alter, or revoke the trusts. The only limitation upon the exercise of these powers was the consent of Mr. Osmer C. Fitts who, it is agreed, had no substantial adverse interest in either trust. The exercise of this power of consent was subject to no standards, express or implied, and Mr. Fitts, as the taxpayers concede, could properly "give or withhold his consent as he wishes as long as he does not act dishonestly." In these circumstances Mr. Fitts was not a trustee of this power and owed no duty to the beneficiaries to resist alteration or revocation of the trusts. See *Reinecke* v. *Smith*, 289 U. S. 172, 176. To assume that he would not be amenable to the wishes of his brother and sister-in-law would be closing our eyes to an obvious fact of life. See *Bankers Trust Co.* v. *United States*, 156 F. Supp. 930, 934 (Ct. Cl.). Because the taxpayers at any time after the dividends went into the trusts could readily have obtained them, the taxpayers are deemed to have "received" them within the intendment of § 11. It does not aid the taxpayers that under the trusts the dividends were to be added to principal, for that provision too could have been altered or amended by the taxpayers had they seen fit to do so.

It follows that the taxpayers are not entitled to an abatement. The decision of the Appellate Tax Board is reversed and a decision for the State tax commission is to be entered. The tax commission is to have costs of this appeal.

*So ordered.*