BRADLEY DEWEY & another *vs.* STATE TAX COMMISSION
(and a companion case).

Suffolk. April 1, 1963. — May 6, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & SPIEGEL, JJ.

*Taxation,* Income tax.   *Trust,* Amendment, Revocation, Trustee's discretion, Income.

A gain resulting from a conversion of stock in one corporation into stock
in another corporation upon the merger of the two corporations in 1954
constituted income "received" by a Massachusetts resident within G. L.
c. 62, § 11, where it appeared that prior to the merger he had trans-
ferred the stock of the first corporation to an inter vivos trust created by
him having a situs in New Hampshire and two non-Massachusetts trus-
tees, and that the trust instrument provided that one of the two trustees
should be a "nonfamily" trustee, that the settlor might "at any time re-
move the nonfamily trustee and appoint a successor" who must be a
New Hampshire bank or bank trust officer or lawyer, and that the settlor
might alter, amend or revoke the trust but only with the written assent
of the "nonfamily" trustee: for all practical purposes the requirement
of such assent did not impose any duty on the "nonfamily" trustee with
respect to any beneficiary which would affect the settlor's control of the
trust.

APPEALS from decisions of the Appellate tax board.

*Robert Proctor (Jesse R. Fillman* with him) for the tax-
payers.

*Herbert E. Tucker, Jr.,* Assistant Attorney General, for
the State Tax Commission.

WHITTEMORE, J.   The appellants, Bradley Dewey and his
wife Marguerite M. Dewey, in one case, and Dewey's daugh-
ter Ann Dewey Kent and her husband, S. Leonard Kent,
Third, in the other case, appeal from decisions of the Appel-
late Tax Board which, in reliance on *State Tax Commn.* v.
*Fitts,* 340 Mass. 575, sustained the assessment against the
appellants of additional taxes on 1954 income.   The income
thus taxed resulted from the conversion in 1954 of shares of
Dewey & Almy Chemical Company (Dewey & Almy) into

shares of W. R. Grace & Company (Grace) upon the merger of the corporations.   See *Madden* v. *State Tax Commn.* 333 Mass. 734 (1956).

The records on appeal include a transcript of the testimony before the board.   G. L. c. 58A, § 13.   The appellants contend that certain subsidiary findings are contrary to undisputed evidence but, as we view the case, nothing turns on the divergences and we assume that the facts are as found by the board but with the qualifications for which the appellants contend.

Prior to the merger and in contemplation of it, Dewey, Mrs. Dewey, and Mrs. Kent (donors) had each, respectively, transferred shares of Dewey & Almy to two non-Massachusetts trustees of a separate trust set up to receive the shares of that donor.   This was done under the careful guidance of competent counsel.   Because of family real estate in New Hampshire and Dewey's retirement plans, a situs for the trusts in that State was chosen.   Each declaration of trust provided that during the lifetime of the donor the trustees should pay all the net income to the donor and at the donor's death a part of the trust property should be held for the benefit of the donor's spouse and the balance for the benefit of the donor's issue.   Article 7 of each trust provided that the donor might alter, amend or revoke the trust but only with the written assent of the "non-family" trustee.   Article 11 provided that of the two trustees one should be nonfamily and that the donor "may at any time remove the non-family trustee and appoint a successor." It provided that any successor must be either a national bank or trust company having a principal place of business in New Hampshire or an individual resident in the State who is a trust officer of such a national bank or trust company or a lawyer experienced in serving as trustee.

The statute involved (G. L. [Ter. Ed.] c. 62, § 11[1]) provided: "Any inhabitant of the commonwealth *who receives*

_____
[1] Statute 1955, c. 592, § 3, substituted for the italicized word, "income," in the text above, the following ", is entitled to, or to whom income is available,".

*income from one or more trustees* or other fiduciaries who are not subject to taxation under this chapter, shall be subject to the taxes imposed by this chapter upon such income according to the nature of the income received by such trustees or other fiduciaries, and shall include such income in a return as required by section twenty-two" (emphasis supplied).

The holding of the *Fitts* case (340 Mass. 575, 579–580) is that where the donors, a husband and wife, had each in separate trusts reserved the right to alter or revoke with the assent of the husband's brother, the donors should be treated as having in effect received certain liquidation dividends which had been paid to the trustees because, upon demand, the donors could have obtained them. We held that the brother was not a trustee of the power and it was to be assumed that he would be amenable to the wishes of the donor, whether brother or sister-in-law.

The appellants contend that under the instant trusts the donors do not have effective control of the trust property inasmuch as the independence of any nonfamily trustee has been assured and he would owe a duty to all the beneficiaries to determine whether a proposed revocation or amendment would be wise in the circumstances. They refer to Restatement 2d: Trusts, § 330, comment 1: "There may be a standard by which the reasonableness of the trustee's judgment can be tested even though . . . [not] expressed . . . and even though . . . indefinite. . . . [T]he purpose of the settlor in inserting the provision may be important."

The appellants stress the evidence as to their purpose and that Dewey, acting for himself and the other donors, picked as the original nonfamily trustee a substantial New Hampshire businessman experienced in fiduciary duties and told him that, if the issue arose, the power to consent would place a responsibility on the nonfamily trustee to exercise his judgment in the best interests of all concerned in the light of the purposes of the trust and that the nonfamily trustee must "realize the obligations imposed upon him as a fiduciary before giving . . . assent."

This evidence of matters outside the trust did not affect its construction. It may be questioned whether the evidence required a finding that there was an intention to impose the duty now asserted, a duty which, as the Restatement points out, would be subject to court review. In any case, the legal obligations of the trustee are those expressly or impliedly imposed by the trust instrument. Nothing therein in terms limits the trustee's discretion and we discern no implication of a limitation. The omission of words of limitation suggests an intention that there be none. Certainly an enforceable duty in the trustee to be regardful of beneficiaries would have greatly hampered the donors in persuading a trustee to agree to amendments. If a court enforceable obligation had been intended, an exculpatory clause in respect thereof would have been indicated.[1] Nothing in the trusts suggests that the donors intended to protect against their own improvidence or unwise decisions under altered circumstances. See Restatement, *ibid.*

The Restatement suggests that the trustee's power is to be construed as unrestricted where a tax purpose is thereby served. It is undisputed that it was intended that these trusts be so drawn as to avoid Federal gift taxes. The appellants contend, however, that this comment is inapposite for the regulations governing the Federal gift tax required only that the trustee not have "a substantial adverse interest in the disposition of the transferred property or the income therefrom." U. S. Treasury Department Regulations 108, § 86.3. But even if express restrictions on the trustee's discretion were not omitted for gift tax reasons[2] it does not follow that the omission is insignificant.

---

[1] The exculpatory clause in the trusts appears inapplicable: "'No trustee at any time acting under the provisions of this trust instrument shall be required to give any security for the faithful performance of his duty. No trustee under this trust instrument shall ever be held responsible for any act or omission of any other trustee, or for any loss or depreciation of any part of the trust estate unless such loss or depreciation shall have been directly caused by his own dishonesty or gross negligence."

[2] Section 86.3 states that a "trustee, as such, is not a person having an adverse interest." The effect of an express, court enforceable, obligation to regard the interests of beneficiaries is not discussed.

We need not speculate. We rule that the requirement that a trustee's assent be obtained did not, without more in the trust instrument, impose any duty between trustee and beneficiary other than that the trustee exercise his discretion, honestly and not arbitrarily when requested to do so. See Restatement, *ibid.* Such a provision, in the absence of ambiguities in the instrument, is not to be controlled by conversations or by other extraneous circumstances.

The power to substitute for a nonamenable nonfamily trustee a successor who would also not be accountable for his honest, nonarbitrary action assured the donors control of the trusts for all practical purposes. True, if a beneficiary, hearing of a proposed revocation, showed to any nonfamily trustee, original or successor, that the beneficiary would, in prospect, be wholly dependent upon the trust property and that the donor proposed to give it all away outside the family or dissipate it, it is possible, or likely, that the trustee's consent would not be had. But, for determining tax rules, we may not give weight to such an unlikely event. These trusts gave each of the donors reasonable certainty that, in any foreseeable circumstances in which the donor would wish to revoke or amend, the donor would be able to do so. Thus, Mrs. Dewey was able by amendments made with the assent of the nonfamily trustee, to insert substantial provisions for Massachusetts Institute of Technology and for two persons who had been part of the household for many years. The trustee's assent was not at the risk of accounting in court to any beneficiaries who deemed themselves aggrieved.

The explanation that Dewey gave the prospective first nonfamily trustee that the provision for removal was to provide for ''some disabling event'' in no wise limited the donor's power under any of the trusts.

We agree with the board that the *Fitts* case is controlling and that the income received by the trustees was constructively received by the donors.

*Decisions affirmed.*