RoSCOE L. CHASE, trustee, *vs.* THE UNION NATIONAL BANK OF LOWELL, executor, & others.

Middlesex.  April 13, 1931. — May 29, 1931.

Present: RUGG, C.J., CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Capital and Income.  Words,* "Net income, proceeds and profits."

By his will a testator placed $10,000 in trust, "all the net income, proceeds and profits" to be paid to a daughter during her life and at her death the trust to cease "and said amount to revert to my estate" and to be distributed, by a residuary clause, among five children, including the daughter, and a grandchild.  The daughter lived over twenty years after the testator and during that period certain of the securities in which the $10,000 fund was invested and rights to subscribe for new shares were sold and new investments made, the result being that the fund was more than doubled.  The will contained no express authority to sell the securities in which it might first be invested and nothing to indicate that the testator had in mind the possibility that rights to subscribe to new shares of stock in any corporation would come to the trustee.  Upon a petition by the trustee for instructions to determine whether the gains thus resulting constituted capital and belonged to the ultimate beneficiaries or constituted "net income, proceeds and profits" and belonged to the estate of the life beneficiary, it was *held,* that

(1) The use of the words "net income, proceeds and profits" did not indicate an intention that the trustee was expected to pay the

life beneficiary anything more than the net income of the trust property;

(2) Gains in the fund from an appreciation in its value or derived from reinvestment or from the sale of rights were a part of the corpus of the trust estate to be divided among the ultimate beneficiaries.

PETITION for instructions, filed in the Probate Court for the county of Middlesex on June 6, 1930, by the trustee under the will of Josephine M. Chase, late of Lowell.

The petition was heard upon agreed facts by *Leggat,* J. Material facts are stated in the opinion. A final decree, entered by order of the judge, is described in the opinion. The ultimate beneficiaries of the trust appealed.

*C. Robinson,* for respondents Roscoe L. Chase and others, submitted a brief.

*G. N. Moushegian,* (*F. P. Marble* with him,) for the respondent The Union National Bank of Lowell, executor.

SANDERSON, J. This is a petition for instructions brought by the trustee under the will of Josephine M. Chase. The first clause of the will is in the following terms: "First: I give, devise, and bequeath to Roscoe L. Chase, the sum of ten thousand dollars in trust, nevertheless, to be invested and to pay over to my daughter, Laura J. Chase, all the net income, proceeds and profits to her sole use, during the term of her natural life. At her death said trust shall cease and be determined and said amount to revert to my estate, and distributed as hereinafter mentioned." The residuary clause is in the following terms: "Third: The rest, residue and remainder of my said estate, I give, devise, and bequeath to my five children, Fred G. Chase, of Los Angeles, California, Edwin E. Chase of Denver, Colorado, Laura J. Chase of Lowell, Mass., Roscoe L. Chase of North Adams, Mass., and Harold M. Chase of Wilmington, North Carolina, and to my grand-son Ernest W. Turner of Portland, Maine, to be divided equally among them, share and share alike." On October 4, 1909, the date of the death of the testatrix, her five children and the grandson named in the will were living. At the date of the death of the daughter, Laura J. Chase, on April 27, 1930, three of the children as well as the grandchild named

were living. Fred G. Chase died December 20, 1924, leaving no widow and as his issue then living four children, two of whom are administrators of his estate appointed in California in 1925. The respondent Union National Bank is executor of the will of Laura J. Chase.

The original trust fund of $10,000 was invested in various securities during the lifetime of the life tenant. Certain of these securities and rights to subscribe for new shares of stock were sold by the trustee during that time. These sales resulted in an aggregate gain of $11,507.47; this amount was reinvested by the trustee in other securities which now are held by him. The total investment in or cost of the securities now held by the trustee is $21,372.25. The judge of the Probate Court entered a decree ordering the trustee to pay over to the executor of the will of the life tenant all sums in excess of $10,000 of the principal of the trust, and to distribute the balance of the trust fund, one sixth to the estate of the said Laura J. Chase, one sixth to the estate of Fred G. Chase, and one sixth to each of the following respondents, Edwin E. Chase, Roscoe L. Chase, Harold M. Chase and Ernest W. Turner. All the respondents except the Union National Bank appealed from this decree.

Under the petition for instructions the only question now to be decided is whether the gains arising from the sales of securities or the proceeds of rights to subscribe for new stock constitute capital and belong to the remaindermen or constitute "net income, proceeds and profits" and belong to the estate of the life tenant.

There was a purpose manifest in the will and codicil to do more for Laura J. Chase than for any of the other beneficiaries, and this circumstance may be considered in interpreting the words used in the will, but it does not justify the court in assuming that the testatrix had an intention to benefit her not expressed in the will. The trustee was given a definite sum of money to be invested. There was no express authority to sell the securities in which it might first be invested and nothing to indicate that the testatrix had in mind the possibility that rights to subscribe to new

shares of stock in any corporation would come to the trustee. She apparently contemplated merely a trust fund of $10,000 when established, and a trust fund of the same amount when the trust came to an end. The testatrix, having the $10,000 on her mind as the trust fund and not contemplating that it might be increased or decreased in amount during the period of the trust, might naturally refer to the property to revert to her estate as "said amount." In *McElwain* v. *Attorney General*, 241 Mass. 112, the testator bequeathed $112,500 to trustees to pay "the net annual income" thereof to certain beneficiaries for life and after their deaths "the aforesaid sum of One Hundred and Twelve Thousand Five Hundred (112,500.) Dollars" with any undistributed interest accrued thereon was to be paid over to certain remaindermen. The principal of the original trust fund had greatly increased in value from investments at the time of distribution. The court stated the question to be: "Who are entitled to receive the increment or increase in the capital of the trust fund"? and in reaching its conclusion said: "While he [the testator] may not have contemplated the rise in value of the securities or other property of which the fund consisted at his death, or in which it might be subsequently invested, he intended that portion of his estate to be devoted to the purpose designated. It is a single fund, the whole of which constitutes the principal named in the will." The entire increment was ordered to be distributed among the remaindermen. See *Claflin* v. *Dewey*, 177 Mass. 166, 169. We are of opinion that in the case at bar the testatrix, in referring to the trust property to go into the residue at the termination of the trust as "said amount," intended to designate the trust fund as it existed at that time, whether it was then $10,000 or had either decreased in value by reason of losses or appreciated in value from gains from sales or from the proceeds of sales of rights. She made no provision to enable the trustee to turn into the residue $10,000 at the termination of the trust in case the fund had then depreciated in value or for some other reason suffered a loss.

The word "income" may have different meanings de-

pending upon the connection in which it is used and the results intended to be accomplished.  Gains or profits as the result of carrying on a business of buying and selling, and gains derived from the sale of stocks, have been held to be taxable as income.  *Tax Commissioner* v. *Putnam*, 227 Mass. 522, 526, 527, 529.  As a general rule in the case of a trust "any gain made by a change of investments is an accretion belonging to the corpus of the trust fund and belongs to those who own the corpus of the fund.  Such gains become part of the corpus as much as the original money contribution to the trust fund."  *Williams* v. *Milton*, 215 Mass. 1, 11.  See *Tax Commissioner* v. *Putnam*, 227 Mass. 522, 527. The right to subscribe for an increase of stock to be issued by a corporation must be treated as property capitalized by the corporation.  It is in the nature of a stock dividend. *Hyde* v. *Holmes*, 198 Mass. 287, 293.  If the words "net income" alone had been used they would not disclose an intent to include gains from investments of the trust fund or the sale of rights.  If the word "proceeds" alone or in conjunction with the word "income" had been used this would not show a clear intention that anything more than income was to be paid to the beneficiary for life.  "Proceeds" is a word of varied significance and employed with different meanings.  In *Morrison* v. *Palmer*, 226 Mass. 383, the court held that the words "first proceeds of the business" in a contract meant "net profits" of the business. The word "profits" may not always have the same meaning but may have different meanings "dependent upon the connection in which it is used and the result intended to be accomplished."  *Tax Commissioner* v. *Putnam*, 227 Mass. 522, 526.  In *Stewart* v. *Phelps*, 75 N. Y. Supp. 526, affirmed in 173 N. Y. 621, the life tenant was held not to be entitled to the gains on sales of securities or the sale of rights to subscribe to new stock although the testator had provided that she should receive "the net rents, incomes, issues, and profits."  A similar result was reached where the word "profits" was used with the word "income" or other words of similar meaning in *Guthrie's Trustee* v. *Akers*, 157 Ky. 649, *Gartenlaub* v. *Union Trust Co. of San Francisco*, 198

Cal. 204, *Brinley* v. *Grou,* 50 Conn. 66, *Beers* v. *Narramore,* 61 Conn. 13, and *Boardman* v. *Mansfield,* 79 Conn. 634. In the case last cited the testator bequeathed $200,000 in trust, "the dividends, rents and profits" of which were to belong to his wife for life with remainder over at her death. When that occurred the trust fund, augmented by stock dividends and the proceeds of sales of rights, had increased in market value to about $328,000. The court held that the accretions belonged to capital and passed to the remaindermen, saying at page 637: "The words 'dividends, rents and profits,' upon which reliance is thus sought to be placed, are no more comprehensive, as applied to personalty, than would have been 'net income' used in their stead," and quoted with approval from an earlier case: "'Whether the testator makes use of the expression "dividends," or "dividends and profits," or "dividends, interest, and profits," or (as in this case) "interest, dividends, profits, and proceeds," I look upon all of them to come to the same thing, and that this is too nice a circumstance to found any distinction on.'" In *Atkins* v. *Albree,* 12 Allen, 359, the life tenant was entitled to income by the terms of the will, and the court held that the proceeds of the sale of rights to subscribe to new stock constituted capital and did not belong to the life tenant, and stated at page 361: "The intent is clear that his wife shall receive only the gains or profits on the shares," thus apparently using the words "gains and profits" as synonymous with "income."

The use of the words "net income, proceeds and profits" does not seem to indicate an intention that the trustee was expected to pay the beneficiary anything more than the net income of the trust property. They do not naturally mean that gains on the sale of the trust property or from the proceeds of the sale of rights were also to be paid to her. It is the income, proceeds and profits of the trust fund that are to be paid, not the gains in the fund from an appreciation in its value or those derived from reinvestment or from the sale of rights. We, therefore, are of opinion that these accretions were a part of the corpus of the trust estate to be divided among remaindermen.

The decree must be reversed, and a decree entered ordering the distribution of the whole trust fund composed of the original sum and the aggregate gain thereon, one sixth to the estate of Laura J. Chase, one sixth to the estate of Fred G. Chase, and one sixth to each of the following respondents: Edwin E. Chase, Roscoe L. Chase, Harold M. Chase and Ernest W. Turner.

*Ordered accordingly.*