[Civ. No. 15016.   Second Dist., Div. Three.   July 26, 1946.]

Estate of JOHN WARNER DAVIS, Deceased.   ELLA DAVIS et al., Appellants, v. RAY S. WITCHER, as Trustee, etc., et al., Respondents.

J. E. Simpson and Manley C. Davidson for Appellants.

Edward R. Young, E. L. Searle and Lillick, Geary, McHose & Adams for Respondents.

SHINN, J.—The question for decision upon this appeal is whether, under the will of John Warner Davis, profits realized from the sale of trust assets constitute income or capital. The trial court, upon petition of the trustee for instructions, ruled that the profits, consisting of the value of trust assets above their value when received in the trust, constitute income, and ordered them distributed to the life beneficiary; the remaindermen have appealed. Lila C. Witcher, the life beneficiary, will be referred to as respondent.

The will made cash bequests in the total sum of $329,500;

the estate was first appraised in 1932 at $539,881.61. In 1938-39, no distribution having been made, the remaining assets, many of which had come into the estate through foreclosures, were reappraised at a much smaller figure. After the payment of taxes, expenses of administration and claims, and allowing for property specifically devised and bequeathed, there was available only $18,818.76 in cash, and real and personal property of the appraised value of $212,950, or a total of $231,764.76, as against cash bequests of $329,500. The interested parties entered into an agreement for distribution of the estate. Under the agreement certain bequests were to be paid in full. These do not concern us. There were three bequests of $75,000 each to a sister, Ella Davis, a sister, Lida D. Kirkbride, and a brother, Francis B. Davis, now deceased, and who was the father of Elaine Davis Payne, Joan Davis Barron and John Warner Davis, 2nd, all of the above named being remaindermen of the trust hereinafter mentioned and the appellants herein. There was also a bequest of $10,000 to Robert W. Harper and one of $75,000 to trustees who have been succeeded by respondent Ray S. Witcher, the present trustee. Lila C. Harper, now Lila C. Witcher, is the life beneficiary under the trust and entitled to the net income thereof. A contingent life beneficiary named in the will has deceased. By the terms of the agreement, the property available to meet the above bequests, which totaled $310,000, was to be distributed, by decree of partial and ratable distribution, to the several claimants proportionately and each share was to be made up of specific properties at their appraised value. The four bequests of $75,000 each to the two sisters, the brother, and the trustees were reduced to $65,145.95 each, less taxes and advances; the trustees were to receive the net amount of $59,483.05, consisting of $49.71 in cash and certain described properties, and the agreement provided for a distribution of the specific properties to the several claimants, including the trustees, instead of the cash which they were to receive by the terms of the will. Distribution was made in accordance with the terms of the agreement, and the decree has become final. The several properties which went to each distributee, whether of cash, real or personal property, were specifically described in the decree.

The trustees took title to thirteen parcels of real property, eleven of which were income producing, and this income has

been paid to respondent Lila C. Witcher, as life beneficiary. In 1944 three of these parcels were sold by the surviving trustee at a profit of $8,576.55, that is to say, they had been received at their appraised value of $14,750 and were sold for $23,326.55. The life tenant lays claim to these profits and to any profits that may be realized from future sales, contending that they constitute income, and the remaindermen, as we have stated, contend that such profits should be retained by the trustee as corpus. The parties are in substantial agreement as to the general principles of law which determine whether profits from the sale of trust property constitute capital or income. The life beneficiary contends that the case is taken out of the general rules by the specific provisions of the will; that under those provisions the capital is limited to a certain amount and all in excess of that must be treated as income. This construction was adopted by the trial court and is contended by appellants to be erroneous.

The general rule, supported by numerous decisions, is stated in 65 Corpus Juris 859, section 736, as follows: "Where stocks, bonds or other property belonging to the trust estate are sold, the money received, including profits, if any, ordinarily constitutes a part of the corpus of the estate."

*Comment b* of section 233 (1) of the Restatement, Trusts, page 682, says:

"*Other receipts.* Subject to the allocation of receipts from unproductive or wasting property (see §§ 239-241), and except as stated in Comment *c*, money or other property received by the trustee as the proceeds of a sale or exchange of the principal of trust property is principal. Similarly, where trust property is taken on eminent domain, the proceeds received by the trustee are principal. If trust property is destroyed by fire or other casualty, the proceeds of insurance thereon received by the trustee are principal.

"Subject to the allocation of receipts from unproductive or wasting property (see §§ 239-241), and except as stated in Comments *c* and *d*, profits arising from the sale or exchange of the principal of trust property or any enhancements in the value of the principal of trust property are allocable to principal, not income; and losses incurred by the sale or exchange or destruction of or damage by casualty to the trust property are chargeable to principal."

The rule is also stated in 4 Bogert on Trusts, section 823; 2 Scott on Trusts, sections 233, 233.01; 3 Page on Wills (lifetime ed.), section 1159; 33 American Jurisprudence, page 849, section 340; Perry on Trusts, section 547, and has been followed in California (*Estate of Gartenlaub*, 185 Cal. 648 [198 P. 209, 16 A.L.R. 520]; *Estate of Gartenlaub*, 198 Cal. 204 [244 P. 348, 48 A.L.R. 677], and *Estate of Canfield*, 104 Cal.App. 181 [285 P. 363].) In the last case it was said: "In view of the decision rendered by the Supreme Court of California in *Estate of Gartenlaub*, 198 Cal. 204 [48 A.L.R. 677, 244 P. 348], it seems to be settled beyond further doubt that in an instance like that now before us, where the increase in assets realized, upon a sale of stocks or bonds of the trust estate did not include any accumulation of income and resulted solely from increased market value of the property, a gain so realized remains a part of the corpus of the trust estate. While the particular application of this rule in the Gartenlaub case was not identical with that presented in the case at bar, the views expressed by our Supreme Court fully cover the subject."

The trust in question was created by Article Sixteenth of the will, reading as follows:

"I give and bequeath unto my brother, Francis B. Davis, of Woodbury, New Jersey, and Robert W. Harper, of No. 2355 Luzerne Avenue, Los Angeles, California, Trustees, or the survivor of them, and such trustee as may be appointed and constituted in the place and stead of either of them, the sum of seventy-five thousand dollars, IN TRUST, nevertheless, for the following purposes: To invest and reinvest and keep the same invested, and pay the net income thereof, in monthly installments as near as may be, unto my friend, Lila C. Harper, for and during the term of her natural lifetime, and upon her death, should her mother, Mary B. Harper, survive her, then said income shall be paid unto her said mother, Mary B. Harper, during her lifetime, and upon the death of said Mary B. Harper in case she should survive the said Lila C. Harper, or upon the death of said Lila C. Harper, in case she should survive the said Mary B. Harper, I give and bequeath said sum of seventy-five thousand dollars unto my sisters, Ella Davis and Lida D. Kirkbride, and my brother, Francis B. Davis, in equal shares, should they then be living, but if either of my said sisters should then be deceased, then to my surviving sister and brother in equal shares, and in case both

of said sisters should then be deceased, then to my said brother, Francis B. Davis, but should my said brother predecease me or the said Lila C. Harper, she having survived me, and the said Mary B. Harper, she having survived the said Lila C. Harper, then I give and bequeath such part or parts of said sum of seventy-five thousand dollars which he would be entitled to receive if surviving either or both me and the said Lila C. Harper and the said Mary B. Harper, as aforesaid, unto his children, Elaine S. Davis, Joan W. Davis, and John Warner Davis, 2nd, in equal shares, but should any of said Elaine S. Davis, Joan W. Davis, and John Warner Davis, 2nd be deceased, his or her share shall go to the survivor or survivors of them, unless he or she shall have left lawful issue, in which event such lawful issue shall take the parent's share.''

We do not understand respondent to contend that profits from sales of capital are income under the commonly used and accepted meaning of the word, nor could that argument be expected to prevail. As commonly used, the word ''income'' means returns from investments or earnings of property, as distinguished from appreciations in value of the property or profits from buying and selling. When the words ''income'' or ''net income'' are used in a document, they must be given the meaning commonly attributed to them, unless it can be seen that the maker of the document intended them to have a different meaning. There was no definition of ''net income'' in the will nor was anything more than the net income given to the life beneficiary. Notwithstanding the fact that the life beneficiary was to receive only the net income, respondent argues that the testator intended her to have all the trust estate which did not go to appellants as remaindermen, and she says that this amount was to be $75,000, no more and no less, and that therefore it must have been the intention of Mr. Davis that if the trust assets came to have a value in excess of that sum, the amount of the excess should be paid over to the life beneficiary. By this line of reasoning respondent reaches the conclusion that Mr. Davis intended the words ''net income'' to have a meaning which would include increases in value of the trust estate above the amount originally placed in trust. Respondent places emphasis upon the fact that the testator used the phrase ''sum of seventy-five thousand dollars'' three times in Article Sixteenth, saying: ''The first time it was used he bequeathed 'the sum of seventy-five thousand dollars' to the

Trustees in Trust; the second and third time that the phrase was used he was disposing of the corpus of the Trust, and in those instances he referred to it as 'said sum of seventy-five thousand dollars,' '' and it is said: ''There is no indication whatever that the Testator had in mind that the Trustees should hold more than seventy-five thousand dollars for ultimate distribution to his sisters and brother,'' and therefore it is insisted that only the principal sum should be paid to the remaindermen and that the life tenant is entitled to all of the accretions or profit. In other words, the designation of what the remaindermen were to take as ''said sum of seventy-five thousand dollars'' is claimed to limit their rights to the original capital of the trust, and it is then argued that the trustor must have intended that any excess, from whatever source derived, should be paid to the life beneficiary as income. In support of this construction of the will, respondent cites *In re Park's Estate,* 173 Pa. 190 [33 A. 884], in which it was held that the rule that extraordinary profits realized from stocks or other profit belong to corpus has been greatly modified by the modern cases and has been distinctly repudiated in Pennsylvania. This holding was against the great weight of authority and must be considered to have been overruled by the later case of *In re Graham's Estate,* 198 Pa. 216 [47 A. 1108], which affirmed the prevailing rule and held it to be the one which obtains in Pennsylvania. Respondent also cites *In re Sherman Trust,* 190 Iowa 1385 [179 N.W. 109]. The will set aside a sum of money in trust for the trustee's son; $2,200 was invested by the trustees in bank stock at a price of $110 per share. At the time of the son's death the value of the stock had risen from $110 to $225 per share, ''due to the fact that the bank paid but relatively small dividends. If it had been willing to let the shares remain at the price they were worth when the trustees bought them, a much larger dividend than was paid to the life tenant could have been paid to him.'' The increased value, amounting to $4,500, was claimed by the remaindermen and by the estate of the deceased son. The opinion refers but briefly to the language of the will, saying: ''The direction to the executors is to pay income annually to the son during life, and that at death of grantor 'said trustees or their successors are to pay the principal sum to the trustees of Iowa College, and to the American Home Missionary Society, to each one-half, for the general uses of said institutions.' '' The court construed the will to

mean that the remaindermen took only the original investment of $2,200, and that the estate of the son was entitled to the balance, and the court said (p. 112 [179 N.W.]) : " 'Principal sum' means the 'main' sum, being the amount left in trust—the amount originally paid for and invested in the stock. 31 Cyc. 1173. Principal sum means also the 'original gift,' being once more the amount invested in the bank stock and not its present value. 31 Cyc. 1174." Relying upon this reasoning, respondent argues that if a direction to the trustees to pay over to the remaindermen the "principal sum" means that the remaindermen are to take no part of the increased value of investments or profits from sales, the will of Mr. Davis should be construed as a bequest to the remaindermen of the sum of $75,000, no more or no less. It is apparent from a study of the opinion in *In re Sherman's Trust* that the decision was influenced to a considerable degree by the fact that the increase in value of the stock reflected earnings which could have been distributed by the bank as dividends. The effect of the decision was to stamp the increased value of the stock as income and not capital, although it was not so designated in the opinion. The decision must be construed as one which departed from the current of authority because of the unusual situation brought about by the action of the bank of paying only nominal dividends out of large earnings. It is out of harmony with the better reasoned cases to which we shall refer.

Appellants say the use of the phrase "seventy-five thousand dollars" was merely descriptive of the trust estate and was not intended as a limitation of the amount they would receive upon termination of the trust, and they say further that profits from sales are not to be treated as income unless the trustor has declared in the trust instrument that they should be so treated, that the profits clearly belong to corpus, and if such profits do not go to them under the Sixteenth Article of the will, they would constitute property not specifically disposed of and would go to some of the appellants under the residuary clause of the will, or if not to them, then to the heirs of Mr. Davis. In no event, they say, would the profits be payable to respondent as income.

Appellants cite *Chase* v. *Union National Bank of Lowell,* 275 Mass. 503 [176 N.E. 508], in which the same question of interpretation was involved. The will read in part: "First, I give, devise, and bequeath to Roscoe L. Chase, the sum of

ten thousand dollars in trust, nevertheless, to be invested and to pay over to my daughter, Laura J. Chase, all the net income, proceeds and profits to her sole use, during the term of her natural life. At her death said trust shall cease and be determined and said amount to revert to my estate, and distributed as hereinafter mentioned." The sum of $10,000 was invested in securities and upon a sale of certain of them a profit of $11,507.47 was realized. The question on appeal was "whether the gains arising from the sales of securities or the proceeds of rights to subscribe for new stock constitute capital and belong to the remaindermen or constitute 'net income, proceeds and profits' and belong to the estate of the life tenant." The court said: "We are of opinion that in the case at bar the testatrix, in referring to the trust property to go into the residue at the termination of the trust as 'said amount,' intended to designate the trust fund as it existed at that time, whether it was then $10,000 or had either decreased in value by reason of losses or appreciated in value from gains from sales or from the proceeds of sales of rights. She [testatrix] made no provisions to enable the trustee to turn into the residue $10,000 at the termination of the trust in case the fund had then depreciated in value or for some other reason suffered a loss." And the court said further (p. 510 [176 N.E.]) : "The use of the words 'net income, proceeds and profits' does not seem to indicate an intention that the trustee was expected to pay the beneficiary anything more than the net income of the trust property. They do not naturally mean that gains on the sale of the trust property or from the proceeds of the sale of rights were also to be paid to her. It is the income, proceeds and profits of the trust fund that are to be paid, not the gains in the fund from an appreciation in its value or those derived from reinvestment or from the sale of rights. We, therefore, are of opinion that these accretions were a part of the corpus of the trust estate to be divided among remaindermen."

In *McElwain* v. *Allen*, 241 Mass. 112 [134 N.E. 620], the court was considering the same question, namely, whether the increase in value of investments belonged to the life beneficiaries or the remaindermen. The will "created a fund of $112,500.00 to be held in trust . . . the net annual income thereof . . . to be divided and paid to beneficiaries who are specifically named." The court said: "If the excess or increment consisted of 'undistributed interest' the terms of the

will would be exactly applicable. The testator created and endowed a charity. While he may not have contemplated that by a rise in value of the securities or other property of which the fund consisted at his death, or in which it might be subsequently invested, he intended that portion of his estate to be devoted to the purpose designated. It is a single fund, the whole of which constitutes the principal named in the will'' and the increase of the capital fund was held to belong to the remaindermen.

In accord are *In re Gerry*, 103 N.Y. 445 [9 N.E. 235] ; and *In re Houston's Will*, 19 Del.Ch. 207 [165 A. 132]. In the former case sums of money were placed in trust, ''The annual interest, income and dividends thereof'' to go to the testator's daughter during her life and upon her death leaving no issue, the trustee was to divide the ''principal or capital sum aforesaid'' among the testator's other children in equal proportions. Upon a sale of the investments, a $23,000 profit was realized, the same being claimed by the representatives of the life tenant and the remaindermen. The court held (p. 236) that the increase belonged to capital, saying: ''In the case in hand the will provides specifically for the interest which the legatee for life was to take in the fund, and it is limited to the 'annual interest, income, and dividends therein. All beyond this must, from necessity, have been intended to go to the remaindermen, for there are no other persons who could lawfully take it.' '' In the latter case the testator gave ''the profits and income'' from a fund to his widow for life and the trustees were directed after her death ''to pay the 'principal sum' to his nephew.'' The court said of this language: ''His reference to the 'principal sum' does not reveal an intent that the sum when paid over should not exceed the original amount, and therefore that accretions which the law would ordinarily allow should be withheld from the remaindermen.''

In *In re Eger's Will*, 139 Misc. 59 [247 N.Y.S. 527], the testator had left the sum of $50,000 in trust to be invested and had directed that ''all the profits, interest and income of said fund as the same shall be received by my executors and trustees shall, during her life, be paid by my said trustees to my said wife, Pauline Egers.'' The fund having been invested and a profit of some $4,000 having been realized from sales of securities, the question arose whether the same was distributable to the life tenant or to the remaindermen. The court

538

was considering the significance of the use of the word "profits" with the words "interest and income" and reached the conclusion that it was not intended by the use of that term to include profits from sales of corpus, and said (p. 530 [247 N.Y.S.]): "However this may be, it has repeatedly been determined that in the ordinary case, a testator does not contemplate that his trustees will indulge in speculation with the investments composing the principal fund, in consequence of which strong evidence is required to demonstrate that any enhancement in value of the trust res is not to be added to and become a part of such principal fund (*Matter of Gerry,* 103 N.Y. 445, 9 N.E. 235; *Matter of Stevens,* 46 Misc. 623, 636, 637, 95 N.Y.S. 297; *Matter of Proctor,* 85 Hun, 572, 573, 33 N.Y.S. 196); it further following as a natural sequence that enhancement in value of the trust res is not 'profit' within the usual meaning of the phrase (*Cross* v. *Long Island Loan & Trust Co.,* 75 Hun, 533, 534, 27 N.Y.S. 495)." The profits from sales were held payable to the remaindermen.

■ As we read the Sixteenth Article, the words "said sum of seventy-five thousand dollars" were intended to identify and describe the trust estate and not to limit it. By employing that phraseology, Mr. Davis was not designating a certain sum of money which would go to the remaindermen. There would not be the sum of $75,000 in the trust estate at the time of the termination of the life estate. It was intended that the trustees would take $75,000 in cash, and the will made provision for the conversion of assets into cash by the executors for that purpose. The trustees were "to invest and reinvest and keep the same invested" and at the termination of the life estate the fund would consist not of cash but of investments, which would have been selected by the trustees in their discretion, uncontrolled by any specific provision of the will. Clearly, Mr. Davis did not intend the remaindermen to take $75,000 in cash, for there would be no such sum nor any considerable amount of cash in the trust, once the original sum had been invested. There was no direction that upon the death of the life beneficiary the assets should be converted into cash and that the remaindermen were to receive thereof the sum of $75,000, nor was there any provision that they should receive trust property to the value and extent of $75,000. It seems clear that the phrase "seventy-five thousand dollars" was used to identify the

trust estate, which would be in the form of securities and other property, rather than to designate a definite sum of money which would not be on hand unless the trust assets should be liquidated. While under this construction the trust provisions are simple and workable, under respondent's construction the trust administration would be a confused and complicated affair. In determining whether the testator intended the appellants to receive exactly $75,000, either in cash or in investments, and the life beneficiary all above that amount, we should consider how such a scheme would work out. Unless it can be said that he wished to bring about the consequences which the plan would lead to, it cannot reasonably be said that it was his plan. To begin with, the trustees were to keep the money invested "and pay the net income thereof in monthly installments as near as may be, unto my friend, Lila C. Harper, for and during the term of her natural lifetime," etc. What are the rights of Lila C. Harper (Witcher) if she be entitled to receive also all accretions of capital, including profits from sales? Should the trustee account to her monthly, or as near as may be? Can he be compelled to cause the assets to be appraised periodically upon demand of Mrs. Witcher? Must he, upon her demand, sell any asset whenever it has acquired a value in excess of its cost and pay her the profit? Must he manage the trust with a view to increasing the value of the corpus, a course which necessarily would be inconsistent with the conservative management which is demanded of trusteeships? Or, in other words, has he the double duty of preserving the estate against loss and that of speculating for profits? Again, assuming the soundness of the argument of respondent that the remaindermen were to take no more than $75,000, how could it be argued that Mr. Davis intended that, in any event, they would receive less than that amount? And if the life beneficiary was to receive from time to time sums equal to the excess of the current value of the estate above cost, how would the capital be restored in the event of subsequent losses? Manifestly, it could not be done by the withholding of income from the life beneficiary, since the will gives no such direction. The remaindermen would suffer the loss. Under conventional trusteeships, capital losses fall upon the remaindermen, and the life beneficiary suffers through diminution of income, and they benefit in the same manner and to the same extent by additions to the corpus.

Mr. Davis was a man of broad business experience. He must have anticipated that there would be variations in value of the trust assets, that there would be gains and losses. It is reasonable to suppose that he expected that they would be maintained in substantial balance. He made no provision for separating gains from the trust estate nor for making up capital losses from income or any other source. He made generous provision for the life beneficiary, believing, no doubt, that the income would be sufficient to meet her needs. Had he been in doubt about it, would he not have made provision for a more ample income rather than to provide for the distribution to her of capital gains? Furthermore, as already noted, the will made no provision for liquidation of the assets upon termination of the life estate and the payment to the remaindermen of $75,000 in cash or the delivery to them of $75,000 worth of trust assets, in whatever form they might be. Nor was provision made for the delivery of the surplus to the estate of the life tenant or to the residuary legatee.

We are of the opinion that Mr. Davis intended to create a trust along conventional lines and not one which would involve the intricacies of administration and the insecurity and uncertainty of maintaining the capital intact which we have pointed out as inevitable under the construction argued for by respondent. Much would have to be written into the will to make it conform to the interpretation placed upon it by the trial court. We think this is manifest from what we have said, but it is further illustrated by the order instructing the trustee as to the disposition that should be made of the sum in question and of all future profits.

The value of the estate received by the trustee was $59,483.05, although all but an insignificant portion consisted of real property. By the order, the court instructed the trustee to invest $59,483.05 in securities approved by the court, directed that all sums derived from the sale of trust assets, including net profits, and including the profits from the three sales, of $8,576.55, should be held and invested to the full amount of $59,483.05, and further directed that all sums coming into the hands of the trustee from time to time in excess of $59,483.05, whether derived from sales or other disposition of assets, should be deemed income subject to immediate distribution to the life beneficiary. This order purported to be based upon the Sixteenth Article of the will. It was based upon a construction of the will, and not the

agreement, although the figures used were those of the agreement. The only theory of interpretation of the will which would furnish support for the order is the one we have discussed, namely, a construction under which the original trust capital would be invested and there would be payable to the life beneficiary thereafter, as received, all amounts by which the current value of the trust estate exceeded the original cost. If such had been the scheme of the will, the order would have been an appropriate one under the circumstances. It was not, however, in our opinion, the plan of the testator as stated in the will.

Thus far we have discussed the will independently of the agreement and as if the agreement wrought no changes in the basic plan of the testamentary plan. There are arguments pro and con as to the effect of the agreement. Appellants contend that we must look only to the decree of distribution, which followed the terms of the agreement and distributed to the trustees $49.71 in cash and the thirteen parcels of real property, and that we should construe the trust provisions as if the testator had placed in the trust the specific properties which the trustees took under the agreement and by the distribution. Their contention is that if these several specific properties had been placed in the trust, there could have been no question but that all profits and losses from sales would have been capital gains and losses, and they say that the agreement to that extent has superseded the will.

We think there has been no abandonment of the plan of the will. The decree of distribution did not purport to state the duties of the trustees nor to interpret the will, and the will therefore is controlling.

It may be added by way of explanation that the major part of the real properties came to the estate through foreclosures of securities held by Mr. Davis. The will, as we have stated, provided for sales to be made by the executors in order to accumulate sufficient cash to meet the bequests. Through unanticipated circumstances, the trustee finds himself in a position where he must make the conversion under the directions of the court. When he has done so and the funds are invested, Lila C. Witcher will be entitled to receive the net income therefrom, as provided in the will. Whatever the gains or losses may be, they will belong to the corpus of the trust; the income may not be used to make up for losses,

and the gains may not be distributed to Lila C. Witcher, in whole or in part, as income.

The order instructing the trustee is reversed for further proceedings in accordance with the views herein expressed.

Desmond, P. J., and Wood, J., concurred.