In re Trusts Under Will of Emma E. Young.

City National Bank of Clinton, trustee-appellee, v. Jane Lamb McCoy Daschbach, appellant; Mrs. Bereanice McNair et al., appellees.

No. 49552.

(Reported in 93 N.W.2d 74)

NOVEMBER 18, 1958.

Holleran & Holleran, of Clinton, for Mrs. Jane Lamb McCoy Daschbach, appellant.

Homer I. Smith, of Clinton, for City National Bank of Clinton, trustee-appellee.

Stanley Mayer and Glenn Cousins, both of Clinton, for Board of Park Commissioners of the City of Clinton, appellee.

E. C. Halbach, of Clinton, for Robert S. Smith, Jr., and Mrs. Albert R. McCoy, executrix of estate of Albert R. McCoy, deceased, appellees.

PETERSON, J.—Emma E. Young departed this life testate on June 4, 1926. She left an estate, after payment of taxes, of $2,300,000. This is the fourth appeal as to construction of various items in the will. The first case was In re Trusts of Young (Pool v. Park Commissioners), 243 Iowa 211, 49 N.W.2d 769. It pertained to payment of the income on $600,000 placed in trust under Item 2 of her will. Second case was In re Trusts of Young, 243 Iowa 223, 49 N.W.2d 775. It involved construction of Item 3 as to a trust of $100,000. The third case was In re Trusts of Young, 248 Iowa 309, 79 N.W.2d 376. It pertained to distribution of income to a life tenant under Item 11. This case also involves Item 11. Since all life tenants have now departed this life it involves distribution of the principal of the trust.

Item 11 is as follows: "I hereby give, devise and bequeath to said Trustees, in trust, the sum of $100,000.00, the income whereof shall be paid quarterly or as received to my niece, Clara Lamb McCoy of Clinton, Iowa, for and during the term of her natural life only, and upon her death the income shall be paid for the term of twenty-one years equally between her son and grandson, and shall neither said son or grandson survive said twenty-one years, the principal of said trust fund shall be paid equally to the heirs of said Clara Lamb McCoy."

A brief synopsis of the will is advisable. In order to arrive at the intent of the testatrix with reference to distribution of the property involved in what is known as the Clara Lamb McCoy trust, it will be necessary not only to analyze Item 11, but to take into consideration the will as a whole. It consisted of thirty-nine items. Testatrix made fourteen outright bequests to relatives and friends totaling $535,000; five charitable bequests totaling $370,000; eleven bequests to trustees to be administered on the basis of income payable to certain named beneficiaries, and the principal to relatives, or to residue, totaling $1,330,000. The residuary clause was Item 35, as follows: "All the rest, residue and remainder of my property is hereby given, bequeathed and devised for the uses and purposes set forth in the thirty-fourth paragraph hereof for the acquisition, maintenance and improvement of the public parks of the city of Clinton, Iowa."

Clara Lamb McCoy, the first life tenant departed this life March 3, 1955. Crawford McCoy, her grandson, predeceased her. He was married, but died without issue. Albert R. McCoy, her son, died June 14, 1957. Report was filed by the trustee to determine the heir or heirs of Clara Lamb McCoy in order that the principal could be distributed in accordance with Item 11. On hearing, the trial court determined that Jane Lamb McCoy Daschbach, daughter of Albert R. McCoy, was the only heir of Clara Lamb McCoy. No appeal was taken from that ruling.

Some years after the death of Mrs. Young, the trustee Frank W. Ellis, now deceased, filed application for authority to commingle certain trust funds for the purpose of more expeditious and profitable investment and reinvestment. He established one trust fund of $100,000 under Item 3, in favor of the granddaughter of decedent, as a separate fund. This fund was subject to invasion. He established and commingled the five charitable trusts in one fund which was called "charitable trusts." He commingled the funds in eleven trusts in one large fund to be called "life and term trusts." Item 11 was a part of this fund.

The court granted authority to commingle the funds. This policy has been maintained continuously by successor trustees since Mr. Ellis' death. The trusts were established in 1934 and for twenty-four years the trustees have filed reports regularly on the basis of commingling of assets. All reports have been approved by the court.

In the life and term trusts the interest of each trust was computed on a percentage basis depending on the amount of the trust in proportion to the total trust assets. The percentage of ownership of the Clara Lamb McCoy trust was 13.3017 per cent of the assets of the life and term trusts as of June 14, 1957, the date of death of Albert R. McCoy. No question has ever been raised concerning the percentage of ownership.

The trial court decided appellant was only entitled to the original amount of the trust of $100,000 less the inheritance tax paid, in the amount of $3600.31, and ordered distribution to appellant by the trustee of $96,409.69.

Jane Lamb McCoy Daschbach has appealed, contending she is entitled not only to said amount, but also to the increment or appreciation of the trust, which amounts to $39,270.92. This

is on the agreed and recognized percentage basis of 13.3017 per cent of the total assets of the life and term trusts. The value of the Clara Lamb McCoy trust on June 14, 1957, was $135,-670.61.

█ It is elementary that in the construction of a will the answer is to determine the intent of the testator. We have so held in this jurisdiction in numerous decisions, and the principle has been approved in all jurisdictions, state and federal. We could cite may cases, but a few recent decisions will suffice. Dunn v. Dunn, 219 Iowa 349, 258 N.W. 695; In re Will of Hagan, 234 Iowa 1001, 14 N.W.2d 638, 152 A. L. R. 1296; In re Estate of Syverson, 239 Iowa 800, 32 N.W.2d 799; Henkel v. Auchstetter, 240 Iowa 1367, 39 N.W.2d 650; In re Trusts of Young (Pool v. Park Commissioners), supra; Clapper v. Clapper, 246 Iowa 899, 70 N.W.2d 145; In re Trusts of Young, supra.

█ I. The trial court arrived at its conclusion on the theory that in the five charitable trusts the testatrix made the provision in each item that the beneficiary should have the "principal sum and accumulations, if any." It will be noted that in Item 11 she provided that "the principal of said trust fund shall be paid equally to the heirs of said Clara Lamb McCoy", omitting the word accumulations. The court held the testatrix had established a pattern as to appreciation in the charitable trusts, and by failure to use the word "accumulations" in Item 11 her intention against leaving such appreciation to appellant was established.

We do not agree with the trial court, and are adopting the position: First—that there is a distinction between the phrase "principal sum" and the word "principal." Second—that there are several provisions in the will of Mrs. Young indicating her intention that Mrs. McCoy's heirs should inherit the full amount in the trust after the last life tenant died, rather than only the original corpus of the trust.

II. The words "principal sum" are restrictive in their connotation. They would refer to the amount originally mentioned in the bequest. The word "principal" is broader in its scope. It could, and we believe in this case does, refer to the full amount in the Clara Lamb McCoy trust at the time of the death of the last life tenant. The trust property was all personal prop-

erty. It was composed of United States Government bonds and stocks and bonds of recognized national corporations. The appreciation does not involve any dividends, interest or income. This was all paid throughout the years to the life tenants. It involves the increase in value of the personal property during the thirty-one years between the death of Mrs. Young and the death of Albert McCoy. The distinction in meaning as to the phrase "principal sum" in charitable trusts and the word "principal" in Item 11 has significance favorable to appellant.

We held in In re Trusts of Young, 248 Iowa 309, 79 N.W.2d 376, that the ownership of the property in the Clara Lamb McCoy trust did not vest until death of last life tenant, or twenty-one years after death of Clara, whichever happened first. Until that happened the remaindermen were uncertain. It logically follows that when Mrs. Young said that on that date "the principal shall be paid equally to heirs of said Clara Lamb McCoy" it would mean the principal in the trust at time of vesting. This was June 14, 1957, date of Albert's death. We said in In re Trusts of Young, supra, at page 314 of 248 Iowa, page 378 of 79 N.W.2d:

"An analysis of Item 11 indicates that in connection with this trust fund of $100,000 Mrs. Young had only her relatives in mind. She starts with her niece, Clara Lamb McCoy; her next provision is for Albert R. McCoy, son of Clara; then Crawford McCoy, grandson of Clara; finally she concludes that twenty-one years after the death of Clara the principal 'shall be paid equally to the heirs of said Clara Lamb McCoy.' This careful listing of relatives, and complete failure to indicate persons outside the family, is an indication that she intended to hold both principal and interest of this trust fund within the family circle."

III. Considering Mrs. Young's will as a whole, there are three matters which indicate her intention that the Clara Lamb McCoy family should inherit all funds in her trust. 1st: In ten items of her will pertaining to trusts in which she left the income to certain relatives, she provided that after the death of the life tenant the bequest: "shall become a part of my estate subject to the terms of this will." No such provision appears in

Item 11. 2nd: The will as a whole indicates a strong solicitude for her relatives, even though the relationship is remote. 3rd: Consideration as to who might get the $39,270.92 under the court's decision is of value in deciding whether or not it was the intention of Mrs. Young that it should go to appellant.

1st. In Items 2, 3, 5, 14, 15, 17 and 18 decedent established trusts with the income to be paid to certain relatives named therein during their lifetime. These trusts total $830,000. In two of these items she left certain definite amounts to the heirs of the life tenant, but in each case there was some excess above such amounts. As to all seven items she provided that after the death of the life tenant or tenants the "principal so left in trust shall become a part of my estate, subject to the terms of this will." The same provision was made with reference to Items 4, 7 and 19, which were outright bequests, subject to survival of beneficiary, and which totaled $110,000.

It is significant that this clause does not appear in Item 11, and weighs heavily as to the intent of Mrs. Young that the full amount remaining in the Clara Lamb McCoy trust should go to her heirs. Mrs. Young was an intelligent woman. She left an extensive and detailed will. She knew that normally there would be a change over the course of years in the amount in the trusts, probably in the form of appreciation. If she had desired that the appreciation in the trust in Item 11 should become a part of her estate she would have so stated, as she did in ten other items in her will.

2nd. Mrs. Young was especially generous as to the park system of Clinton. She must have had a great interest in the extension and proper maintenance of the system, both from the standpoint of beautification of her home city and recreation for its citizens. She was generous as to five charitable institutions of Clinton: Jane Lamb Memorial Hospital; Associate Benevolent Society of Clinton; Young Men's Christian Association; Young Women's Christian Association; First Presbyterian Church.

However, in making distribution of her extensive estate she manifested especial solicitude for her relatives, although many of them were somewhat distant in relationship. First of all she made ample provision for the care of her granddaughter during

her life. She was the only direct heir, and unfortunately was mentally deranged, and under the supervision and care of a guardian. She provided the income from $600,000 for her care and comfort and provided another trust fund of $100,000 to be used for her, with power of invasion if necessary. In eleven other items of her will she either left bequests outright or established trusts for the benefit of nieces, nephews, grandnieces and nephews, and in some cases great grandnieces and nephews. The total amount of these bequests to relatives was $1,411,500.

This solicitude as to her relatives is evidence of an intention on her part that they should have the full benefit of the various trusts established on their behalf to the extent as provided in each bequest. This is an indication that as to Item 11 she intended that the Clara Lamb McCoy family should have the complete benefit of the trust fund she established on behalf of that family, including any appreciation of the fund.

3rd. The trial court did not rule as to what the trustee should do with the increment of $39,270.92. We recognize this question was not directly before the court. The question in this case came before the court on the basis of report filed by the trustee as to trust assets as of June 14, 1957, the date of Albert R. McCoy's death. Appellant filed objections to that part of the report stating that the amount to be distributed to Clara Lamb McCoy's heir or heirs, when determined, was $96,409.69. Consideration of the possibilities with reference to use of the $39,270.92 will assist in arriving at the intention of the testatrix.

If it is left in the life and term trusts the remaining cestui que trustents will receive the benefit of the income from this item during the remainder of the trust period. There are three remaining trusts. We do not believe it was ever the intention of Mrs. Young that any undistributed trusts should receive the benefit of the money in the Clara Lamb McCoy trust. This trust established under Item 11 has received no benefit from the previous seven trusts which have been terminated.

Should the amount be paid on the charitable trusts? There is $264,000 still unpaid on these five trusts. The charitable funds were held in trust for ten years, with income paid to respective charities. Thereafter the principal was to be paid to the charities. However, Mrs. Young had splendid foresight

134

as to the complete ultimate payment of all charitable trusts. *It was not out of the increment developed by trusts established in favor of her remote relatives.* She specifically provided that if there was any unpaid amount as to charitable trusts at the time of the death of her granddaughter, such balance should be paid out of the principal of Items 2 and 3 when thus terminated. Item 2 in favor of the granddaughter as to income was originally $600,000. It is now $800,000. Item 3, which was also in favor of the granddaughter as to income, had a provision as to invasion. There apparently has been some invasion because the trust fund is now $80,000. There will be far more than ample funds to pay any balance unpaid on the charitable trusts when the time arrives. In view of this specific provision as to payment of balance of charitable bequests, we are certain Mrs. Young clearly did not intend that appreciation on any trusts established for other relatives should be applied on charitable trusts. In a comprehensive report filed by the trustee on March 31, 1947, it recited the balances due charitable trusts were to be paid *only from* trusts established under Items 2 and 3, after death of granddaughter. By order of court this was approved.

Should it be transferred to estate funds and now or ultimately paid to Board of Park Commissioners under the residuary clause? The testatrix was so generous to the park system of Clinton that we cannot feel she intended the Clara Lamb McCoy trust item to become a part of the residue. In fact, there are direct provisions to the contrary in her will, as we have heretofore discussed. In ten items of her will she specifically provided that after the termination of the life tenancies the principal should become a part of her estate. No such provision appears in Item 11.

IV. Prior to his death Mr. Ellis as trustee terminated two of the family trusts. When they were terminated, the full amount in the trusts, including original trust fund and the appreciation, was distributed to remaindermen or residue as provided in each item.

Since the death of Mr. Ellis five other family trusts have been terminated by successor trustees. In each case they have followed the same pattern as established by Mr. Ellis. As these trusts were terminated, reports were filed and notice given to

all other beneficiaries under the will and at no time have any of the other affected parties filed objections.

 Counsel for appellant contends this previous history as to termination of trusts establishes res judicata as to the question involved in this appeal. We do not agree that the necessary elements of res judicata are present so that we can reverse on this basis alone. What happened after the death of testatrix cannot fully control the question of intention in her will. However, her attorney, who drew the will, had charge of the distribution. He knew her intentions above all others.

V. The trial court cites In re Sherman Trust, 190 Iowa 1385, 179 N.W. 109, and In re Estate of Etzel, 211 Iowa 700, 234 N.W. 210, in support of its decision as to distribution of only the original amount of the corpus. The cases are not completely analogous to the question in the case at bar. In both cited cases the question to be decided was whether certain increment should be paid to the life tenant or to the remainderman. No such question is involved in this case. The income had always been paid to life tenants throughout the years, and settlement of all income to June 14, 1957, was made with Albert's estate. The appreciation was the result of increase in value through the years as to the securities held in the life and term trusts.

There is some language used in In re Estate of Etzel, supra, which is helpful to our conclusion in this case. The case pertained to the issuance of stock dividends to all stockholders shortly after decedent's death. The widow was left a life estate and contended the basis for stock dividends was earnings accumulated prior to her husband's death. Supporting and quoting from Lauman v. Foster, 157 Iowa 275, 135 N.W. 14, 15, 50 L. R. A., N. S., 531, this court said at pages 709, 710 of 211 Iowa, page 215 of 234 N.W.:

"'The value of the stock may be increased by good management, prospects of business, and the like. But such increase is not income. It may also be increased by an accumulation of surplus; but, so long as that surplus is retained by the corporation, either as surplus or increased stock, it can in no proper sense be called "income."' * * *

" 'But where a corporation increases its capital stock without declaring a dividend, and gives the stockholders the option to subscribe for the new stock in proportion to that held by them, this is regarded by many authorities as incident to the ownership of the stock, and does not belong, as a privilege, to the life tenant. Such increment is treated as capital, to be added to the trust fund *for the benefit of the remaindermen. * * *.*' " (Emphasis ours.)

There is nothing in the record showing the method by which the appreciation was developed in the trusts, but that is not important. There is no dispute as to its presence in the life and term trusts.

VI. We hold after consideration of the terms of Item 11 of the will of Emma E. Young, and of the terms of the will as a whole, that appellant is entitled to distribution of the full amount now in the Clara Lamb McCoy trust of $135,670.61. The trustee is instructed to make distribution accordingly. The case is reversed.—Reversed.

All Justices concur.