In re Trust of Highland Perpetual Maintenance Society, Inc.

Highland Perpetual Maintenance Society, Inc., plaintiff-appellee, v. Bankers Trust Company, trustee, et al., defendants, Everette Bowlsby, objector-appellant, Bankers Trust Company, cross-appellee.

No. 50637.

(Reported in 117 N.W.2d 57)

September 18, 1962.

Stewart, Miller, Wimer, Brennan & Joyce, of Des Moines, for objector-appellant.

Gamble, Read, Howland, Gamble & Riepe, of Des Moines, for defendant, cross-appellee.

Bump, Jordan & Holmes and Brunk, Janss & Dreher, all of Des Moines, for plaintiff-appellee.

Leo J. Lucier, of Des Moines, appointed by the court.

MOORE, J.—The main question upon this appeal is whether, under the trust agreement for the perpetual care and maintenance of a cemetery, Highland Memory Gardens, profits realized from the sale of corporate stock by trustee constitute income or corpus. The trial court upon application of plaintiff ruled the gain, consisting of the amount received on sale above purchase price of stock, was income and approved plaintiff's use thereof for what it originally designated as capital improvements. The trustee and a lot owner have appealed.

The original agreement dated January 10, 1930, created a perpetual care trust with Bankers Trust Company, trustee. Magnolia Cemeteries Association, the then owner of the 40-acre cemetery, was the party of the first part. After the sale of many lots and several conveyances of title to the unsold lots, the interested parties in 1948 submitted to the Polk County District Court an application for several changes of the trust agreement. The court entered a decree modifying some of the terms and approved an addition of 14 acres to the cemetery. It was the trust agreement as modified which the trial court construed and interpreted.

Plaintiff, Highland Perpetual Maintenance Society, Inc., is a nonprofit corporation, the members of which are owners of burial spaces. Except for certain unsold lots owned by Highland Memory Gardens, Inc., the Society at the time of the trial owned and operated Highland Memory Gardens Cemetery.

On June 29, 1961, plaintiff filed its application stating that among the assets in the Perpetual Care Trust were 345 shares of the common stock of Bristol Myers Company, purchased for $3596.69; on June 16, 1961, the closing price was $83.25 per share; the market value was $29,411.25; the capital gain in increment value was $25,814.26; dividends of $362.25 were paid in 1960; and asked the court to order the trustee to sell said stock. Plaintiff asked from the gain it be allowed $6507.20 to pay a judgment against plaintiff (which the court by prior decree had ordered paid out of income); $8000 to modernize and build an addition to the cemetery office; $386 to extend the water system; $220 for road oiling; and $173.48 to repair the tower electrical system.

Among those made defendants were the trustee and all lot owners in the cemetery. Everette Bowlsby, a lot owner, appeared and filed written objections. He alleged any gain from the sale of stock was not income; income only could be used by plaintiff for maintenance and upkeep of the cemetery; and the improvements, while perhaps desirable, were capital improvements. The trustee did not file written objections but took part in the trial.

On September 19, 1961, the trustee reported: it had sold 245 shares of Bristol Myers stock for a total consideration of $19,808.31; the cost was $2554.18; the gain was $17,254.18; it retained 100 shares of said stock; it had sold 50 shares of Dupont de Nemours Company stock for $11,197.52; its cost was $2344.05; the gain was $8853.47; it still retained 50 shares of said stock; it had sold 14 shares of Hudson Bay Oil & Gas Company stock for $189; its cost was $243.09; the loss was $54.09; and asked the court for instructions. There is nothing in the record showing the method by which any appreciation was developed.

The trial court found the increase in value of investments was to be treated as income and used for the maintenance and upkeep of the cemetery. From the Bristol Myers profit the court ordered $15,286.68 paid to plaintiff by the trustee to be used for the items as requested by plaintiff.

The court's decision on the income or corpus issue is based on its interpretation of the intention of the parties to the trust agreement according to its terms and purpose. Therefore it be-

comes necessary to set out parts of the agreement. As amended it provides as follows:

"9. That the Memorial Gardens Association, Inc. and its successor in title and interest of the unsold lots in the original 40 acres, described as: * * * and the additional 14 acres described as: * * * shall deposit with the Bankers Trust Company as Trustee, or its successor, a sum equal to 20% of the gross sale price of all lots sold until the corpus of the Perpetual Maintenance Fund reaches the sum of $225,000.00; and thereafter from the gross sale price of all lots in either the 40 acres or the 14 acres, there shall be paid into the Perpetual Maintenance Fund a sum equal to 10% of the sale price, until each and every lot in the said cemetery or parts thereof, are sold; and in addition there shall be deposited 10% of the sale price of crypts, niches and spaces in the mausoleum, if and when erected; and in addition thereto, the Memorial Gardens Association, Inc. or its successor in title shall pay from the sale price of grave markers and family memorials 5% until the said fund reaches the sum of $225,000.00 and thereafter 10% of the sale price of such grave markers and family memorials, without limitation.

"* * *

"There shall be delivered to the purchasers of lots a certificate of membership in the Highland Perpetual Maintenance Society, Inc., and a deed to the said lot shall be endorsed by the sellers that the payment to the Perpetual Maintenance Fund has been made.

"10. The Trustee agrees that when the deposits to the credit of the Perpetual Maintenance Fund shall have reached in the aggregate $1,000.00 or more, it shall invest such sum, and all sums of like amount deposited thereafter to the credit of the Perpetual Maintenance Fund; and in acquiring, investing and reinvesting, exchanging and retaining, selling and managing the Fund known as the Perpetual Maintenance Fund, the Trustee or its successor shall exercise the judgment and care under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs, and not in regard to speculation, but in regard to the permanent

disposition of their funds, considering the probable income as well as the probable safety of the corpus of the Fund. Within the limitations of the foregoing standard, the Trustee is authorized to acquire and retain every kind of property, real, personal, or mixed, and every kind of investment, specially including, but not by way of limitations, bonds, debentures and other corporate obligations, and stocks, preferred or common, which men of prudence, discretion and intelligence acquire or retain for their own account.

"11. The Highland Perpetual Maintenance Society, Inc. shall issue with every deed to the purchaser of each lot in the said cemetery, a membership in the Highland Perpetual Maintenance Society or its successor. The said Association shall furnish to the Trustee a copy of the By-laws of such Association, which shall contain the elected or selected officers of such society, and the Association shall cause the Trustee to be furnished with the names of the officer or officers of such society who shall have authority to order disbursement of the income of the Perpetual Maintenance Fund.

"12. It is agreed that the income only of the Perpetual Maintenance Fund shall be used for the maintenance and upkeep of Highland Memory Gardens Cemetery and that disbursements from such income shall be made by the Trustee only upon requisition made by the proper officer or officers of the Perpetual Maintenance Society, Inc. in and for Highland Memory Gardens Cemetery and that the Trustee shall be and hereby is authorized to issue vouchers upon the authority of requisitions signed by the proper officers of said Perpetual Maintenance Society, Inc. whose names have been furnished to the Trustee as herein stipulated. The Trustee shall be in no wise liable to inquire as to the use for which such Maintenance Fund is requested by said Perpetual Maintenance Society, but may rely absolutely upon the requisition of the officers of said Society whose names have been furnished to the Trustee as above provided.

"13. This Trust, insofar as the Perpetual Maintenance Fund is concerned, shall continue so long as the said plots of ground herein described are maintained for cemetery purposes, and shall be under the direction and supervision of this Court, with pow-

er to remove the Trustee and appoint a successor and supervise and direct the uses and expenditures of the said Trust Fund herein created."

The first proposition relied on for reversal by appellant and cross-appellee is that the trial court erred in holding and treating gains from sale of corporate stock as income.

By the great weight of authority profits from the sale of trust property or increase in its value ordinarily constitute part of the corpus and are not considered as income, except, of course, where the trust instrument otherwise indicates or provides. 90 C. J. S., Trusts, section 355c; 33 Am. Jur., Life Estates, Remainders, etc., section 336; Scott on Trusts, Volume III, Second Ed., section 233.1; 4 Bogert, Trusts and Trustees, 1948 Perm. Ed., sections 823, 824; Restatement, Trusts 2d, section 233; Estate of Davis, 75 Cal. App.2d 528, 533, 171 P.2d 463, 466; In re Estate of Fera, 26 N. J. 131, 139 A.2d 23, 76 A. L. R.2d 152; Kalbach v. Clark, 133 Iowa 215, 110 N.W. 599, 12 L. R. A., N. S., 801, 12 Ann. Cas. 647; Lauman v. Foster, 157 Iowa 275, 135 N.W. 14, 50 L. R. A., N. S., 531; In re Estate of Etzel, 211 Iowa 700, 234 N.W. 210; In re Trusts of Young, 250 Iowa 126, 93 N.W.2d 74.

In Estate of Davis, supra, the court says:

"As commonly used, the word 'income' means returns from investments or earnings of property, as distinguished from appreciations in value of the property or profits from buying and selling. When the words 'income' or 'net income' are used in a document, they must be given the meaning commonly attributed to them, unless it can be seen that the maker of the document intended them to have a different meaning."

The Young and Etzel cases cite with approval this from Lauman v. Foster, supra:

" 'Any enhancement in the value of stock by reason of withholding the earnings inures entirely to the benefit of the corpus, and the life tenant derives no advantage therefrom. * * * "Income," as used in a will bequeathing stock, means the same thing as "dividend." Reed v. Head, 6 Allen (88 Mass.) 177. In

Spooner v. Phillips, 62 Conn. 62 (24 Atl. 524, 16 L. R. A. 461), it was said: "The use of the stock seems to be limited to the receipt of dividends and income. The word 'dividends,' if unqualified, signifies dividends payable in money. The word 'income' has a broader meaning, but hardly broad enough to include things not separated in some way from the principal. It is not synonymous with 'increase.' The value of the stock may be increased by good management, prospects of business, and the like. But such increase is not income. It may also be increased by an accumulation of surplus; but, so long as that surplus is retained by the corporation, either as surplus or increased stock, it can in no proper sense be called 'income.' It may become producing, but it is not income." ' "

Scott on Trusts, supra, at pages 1746, 1747, analyzes the cases as follows:

"§233.1. Receipts. Ordinary current receipts from the trust property are income. The income includes the return produced by capital which does not impair it, but does not include returns which represent an accretion to capital. Thus interest on bonds and on notes and other securities and obligations, ordinary dividends on shares of stock, rentals received from leases of land, farm crops, and the like, are income.

"On the other hand, profits on the sale or exchange of any part of the principal are ordinarily principal. If the trustee of land sells the land at a profit over the inventory price or, where he has purchased the land for the trust, over the purchase price, the profit is principal. So also are profits on the sale of shares of stock or other securities. * * *."

Appellee relies strongly on In re Trust of Sherman, 190 Iowa 1385, 179 N.W. 109, but it is clearly distinguishable from the case at bar. The Sherman case recognizes our holdings in Kalbach v. Clark and Lauman v. Foster, both supra, and makes no attempt to overrule them but simply holds the wording of the Sherman trust instrument clearly stated the remaindermen receive only the "principal sum". We held this meant the amount

originally left in trust. We find no such language in the present instrument.

The trial court found: "the trust instrument does not spell out by unmistakable language that profits realized from the increase in value of investments shall be treated as income and used for the maintenance and upkeep of the cemetery, but such a conclusion is inescapable when the entire trust instrument is examined to determine the intention of the creator of the trust and to ascertain the real purpose for creating the trust." With this conclusion we cannot agree.

The trust we are considering is one for perpetual care, intended to exist in perpetuity, with no attempt to ultimately dispose of the corpus. Its purpose is to assure permanent adequate income for the maintenance and upkeep of the burial grounds. In the future when all lots are sold, the main source of trust funds will cease. To require the trustee to pay plaintiff the gain or appreciation realized from the sale of assets and take all losses from the corpus is contrary to the terms of the trust instrument and the intent and purpose of its makers. A major part of the trust funds is invested in corporate stocks. Reason and general knowledge clearly show substantial losses as well as gains result from corporate stock investments.

While not controlling, it is interesting to note these rules and by-laws of plaintiff corporation:

Rule 17-c. "Investment of Perpetual Care Funds. The money received for perpetual care shall be deposited in trust as per Agreement on file with the Bankers Trust Company of Des Moines, Iowa, and invested as provided by law, named in Section 1 of Chapter 259 of the laws of the 43d General Assembly of Iowa, or any amendments or additions then to be subsequent acts of the Legislature for the State of Iowa."

Rule 17-d. "Expenditure Limited to Income. Perpetual Care, whether applied to lots and spaces to any space within the confines of the cemetery, shall be limited absolutely to the income received from the investment of the perpetual care fund— no part of the principal being expended—anything herein stated as to the contrary notwithstanding."

The bylaws and rules adopted and certified to the trustee by the owners of burial spaces clearly show their understanding of "income" prior to the filing of plaintiff's application.

Chapter 566A, Code, 1958, provides perpetual care cemeteries shall have a perpetual care and maintenance guaranty fund permanently set aside in trust to be administered under the jurisdiction of the district court in the county where the cemetery is located. Section 566A.3, at the conclusion of the first paragraph, provides:

"Only the income from such fund shall be used for the care and maintenance of the cemetery for which it was established."

In reading the statute we are required to give words in common use their commonly understood meaning unless it is plain from the statute that a different meaning was intended, or unless such construction would defeat the manifest intention of the legislature. Daily Record Co. v. Armel, 243 Iowa 913, 54 N.W.2d 503; Iowa-Illinois Gas & Elec. Co. v. City of Bettendorf, 241 Iowa 358, 41 N.W.2d 1; Smith v. Board of Trustees, 238 Iowa 127, 25 N.W.2d 858; Green v. Brinegar, 228 Iowa 477, 292 N.W. 229. In Eysink v. Board of Supervisors, 229 Iowa 1240, 1244, 296 N.W. 376, 378, we say:

"It must be remembered that it is only where a statute is of doubtful or uncertain meaning that courts are at liberty to apply rules of construction. Where the language of a statute is plain and unambiguous and its meaning clear, courts are not permitted to search for its meaning beyond the expressed terms of the statute. This court has no power to write into the statute words which are not there. These rules are of course elementary, and do not require the citation of authorities."

As applied to this case, we find nothing of doubtful meaning in that part of section 566A.3 set out above. Income must be given its ordinary common meaning.

We hold that by the terms of the trust agreement and also the statute, the gain or appreciation from the sale of the Bristol Myers stock was not income. It became a part of the

corpus from which plaintiff may benefit by additional income in the future.

What we have said is decisive of the appeal. Other contentions have been considered but need. not be discussed or decided. Plaintiff's motion to dismiss this appeal, ordered submitted with the case, is without merit and is overruled.—Reversed and remanded for decree in accordance herewith.

All JUSTICES concur.